### UNITED STATES DISTRICT COURT
### DISTRICT OF IDAHO

| | | |
|---|---|---|
| NAOMI LEGERE-GORDON,<br>individually and on behalf all others<br>similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | **CASE NO.** 1-19-cv-360 |
| v. | ) ) ) | |
| FIRSTCREDIT INCORPORATED, | ) ) ) | |
| Defendant. | ) ) | |

### UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

### I. INTRODUCTION

Following over a year of protracted litigation, and as a result of private mediation before Hon. James Ware (Ret.) of JAMS, Naomi Legere-Gordon and FirstCredit Incorporated ("FCI") reached an agreement to resolve this class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

The TCPA makes it unlawful to make a call using an automatic telephone dialing system ("ATDS") or artificial or prerecorded voice to a cellular telephone number without the prior express consent of the called party. FCI denies that it violated the TCPA with respect to Ms. Legere-Gordon and the putative class members.

The settlement provides broad relief for all persons who received autodialed or pre-recorded calls from FCI on their cellular telephones and requires FCI to institute a number of meaningful changes to its business practices to help prevent future autodialed calls to

cellular telephones without consent.  Importantly, members of the Settlement Class will not release their individual claims against FCI.

In light of the risks, uncertainties, burden, and expense associated with continued litigation, this settlement constitutes an excellent result, and this Court should preliminarily approve it. To be sure, FCI denies the material allegations in Ms. Legere-Gordon's complaint; disputes that it used an ATDS, without prior express consent, to contact either Ms. Legere-Gordon or the class members she seeks to represent; contends that Ms. Legere-Gordon's claims are not amenable to class certification; and denies that Ms. Legere-Gordon and class members are entitled to damages or injunctive relief. Moreover, FCI – due to its financial condition and limited available insurance – would be unable to withstand a class-wide judgment requiring it to fully compensate all persons it called with a purported ATDS over the past five years.

In line with the parties' agreement, Ms. Legere-Gordon respectfully requests that this Court: (1) conditionally certify the settlement class, (2) conditionally approve the parties' settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval, (3) appoint Ms. Legere-Gordon as the class representative, (4) appoint Ms. Legere-Gordon's counsel – Gary M. Klinger of Mason Lietz, & Klinger, LLP and Anthony Paronich of Paronich Law, P.C. – as class counsel, (5) approve the notice program proposed by the parties as the best practicable under the circumstances that satisfies due process and Rule 23, (6) set a date for a final approval hearing, and (7) set deadlines for objections.

2

## II. PROCEDURAL HISTORY

On September 18, 2019, plaintiff filed the instant Complaint.  *See* Docket No. 1.

On October 17, 2019, FCI filed an Answer denying liability.  *See* Docket No. 14.

On December 10, 2019, the parties filed a motion for a protective order as they had already begun discovery.  *See* Docket No. 17.

On December 24, 2019, the parties submitted a discovery plan. *See* Docket No. 19.

On February 22, 2020, a Motion to Compel Discovery from the Defendant was filed. *See* Docket No. 22.  This Court granted that motion to compel on March 23, 2020. *See* Docket No. 26. In connection with that motion to compel, a subpoena on Ontario Systems, LLC, regarding the class data needed for the case was submitted to the Court. *See* Docket No. 24. While working through discovery issues related to the Plaintiff's proposed class, the Court continued the scheduling order several times. *See* ECF Nos. 31, 33 and 35.

On September 15, 2020, the parties participated in an all-day mediation held before experienced and respected mediator Hon. James Ware (Ret.) of JAMS.  *See* Exhibits 1 and 2, Declarations of Anthony I. Paronich and Gary M. Klinger. Through the mediation, prolonged discovery process, and expert witness work, the parties reached a tentative class settlement agreement. *Id*.

## III. SUMMARY OF THE SETTLEMENT

The settlement requires substantial injunctive relief aimed at preventing future unwanted calls to the cellular telephones of consumers nationwide. To this end, the settlement calls for the certification of the following class defined as:

All natural and juridical persons within the United States (1) to whom FCI placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to the intended recipient of Defendant's calls, (3) by using an automatic telephone dialing system or an artificial or prerecorded voice, (4) from September 18, 2015 through the date the Order of Preliminary Approval of Class Action Settlement is entered by the Court.

Settlement Agreement, ¶ 1.A.

The settlement also requires FCI to implement a series of specific changes to its calling practices, including:

1.    FCI shall update and improve its processes and procedures concerning compliance with the TCPA.  Such policies and procedures shall include implementation of a scrub of phone numbers placed by clients or otherwise obtained to determine whether the number is a cell phone. If a scrub determines a phone number is a cell phone, FCI will not put it on its dialing equipment unless it has a good faith basis to believe there is consent to call the number or the law otherwise permits such calls.

2.    FCI shall revise its written TCPA processes, procedures, and training materials.

3.    FCI will implement regular training for its employees concerning its TCPA processes and procedures.

4.    This Stipulated Injunction will last for 24 months after it is entered by the Court.

5.    FCI will be required to issue quarterly reports to class counsel concerning TCPA litigation during the 2-year injunctive period.

6.    FCI will submit proof of compliance with the injunction to Class Counsel by way of providing the training and testing materials used in the training upon the commencement of such training.  Furthermore, a declaration of the responsible person at FCI for ensuring compliance with the training requirements of the injunction will be provided upon completion of the training. Additionally, FCI will be required to issue quarterly reports to class counsel concerning TCPA litigation during the 2-year injunctive period.

7.    At the end of the 24-month Stipulated Injunction, FCI shall submit to Class Counsel a declaration from its training coordinator confirming that training was provided on a regular basis during the 24-month injunction term. FCI shall also submit to Class Counsel an exemplar of the revised TCPA testing materials to confirm FCI's compliance.

*See* Exhibit 5 to Settlement Agreement.

In exchange for this injunctive relief, Class Members will waive their opportunity to bring a class action under the TCPA against FCI arising out of calls made before this Court preliminarily approves the settlement.  *Id*. at ¶ 19.  Critically, class members will not, however, release any individual claims they may have against FCI, which they will be free to pursue in separate litigation.  *Id*.

## IV. ARGUMENT

As a matter of "express public policy," federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also* William B. Rubenstein, *Newberg on Class Actions* ("Newberg") § 13.1 (5th ed. updated 2015) (citing cases).

A court may approve a class action settlement if it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The Court must "review[] the substance of the settlement . . . to ensure that it is 'fair, adequate, and free of collusion.'" *Lane v. Facebook*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). The Court is "not to reach any ultimate conclusions on the contested issues

of fact and law which underlie the merits of the dispute, nor is the proposed settlement to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Smith v. CRST Van Expedited, Inc.*, No. 10–CV–1116–IEG (WMC) 2013 WL 163293, at *2 (S.D. Cal. Jan. 14, 2013) (internal quotation marks and citation omitted). "In making this appraisal, courts have broad discretion to consider a range of factors such as [1] the strength of the plaintiff's case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement." *Id.* at *2–3 (internal quotation marks and citation omitted) (finding the proposed settlement "fair, adequate, and free of collusion" on the grounds that "the settlement is the product of arms-length negotiations by experienced counsel before a respected mediator, reached after and in light of years of litigation and ample discovery into the asserted claims").

"[T]he Court need not conduct a full settlement fairness appraisal before granting preliminary approval; rather the proposed settlement need only fall within 'the range of possible approval.'" *Dennis v. Kellogg, Co.*, 09-cv-1786-IEG(WMC), 2013 WL 1883071, at *4 (S.D. Cal. May 3, 2013) (quoting *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008)). "Essentially, the court is only concerned with whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly

preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys." *Id.* (internal quotation marks and citation omitted).

As set forth in the following, the proposed settlement warrants preliminary approval.

## A. The Parties Negotiated Their Settlement At Arm's-Length, And With The Assistance Of A Respected Mediator

The Court's role is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotes and citations omitted); *see also In re Online DVD*, 779 F.3d 934, 944 (9th Cir. 2015) (noting settlements in class actions "present unique due process concerns for absent class members," including the risk that class counsel "may collude with the defendants") (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2010)).

Here, the proposed settlement followed a near completion of the discovery period. Furthermore, the settlement was only tentatively reached after a full-day mediation session with Hon. James Ware (Ret.) of JAMS on September 15, 2020. Furthermore, the settlement then necessitated further negotiations, which took place during the following month. *See* Exhibit 2, Declaration of Anthony I. Paronich ("Paronich Decl.") at . Indeed, Judge Ware – through an all-day, virtual in-person mediation session that the parties attended – was instrumental in resolving this case. Accordingly, there can be no doubt that the parties negotiated their settlement at arm's length and in good faith. *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] . . . helps to ensure that the

7

proceedings were free of collusion and undue pressure."); *Sandoval v. Tharaldson Emp. Mgmt., Inc*., 2010 WL 2486346, *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc*., 2009 WL 3345762, *5 (D. N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."), *see Wilson v. Everbank*, 2016 WL 457011, *6 (S.D. Fla. Feb. 3, 2016) (finding no evidence of fraud or collusion where the settlement was negotiated at arms' length, and where the mediation was overseen by a nationally renowned mediator). Additionally, as discussed below, the final settlement fairly balances the rights of the class (all individual claims retained) with the relief obtained (an injunction and substantial changes to FCI's calling practices).

## B. Ms. Legere-Gordon Faces A Variety Of Legal And Factual Defenses To Her Claims, Which Weigh In Favor Of Settlement

The Court must also consider the following factors initially set forth in *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004):

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *Id.* at 575. The court need not consider all of these factors. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("The factors in a court's fairness assessment will naturally vary from case to case[.]").

8

With respect to the first three factors, there is significant risk in this case. A primary risk in this case relates to the fact that Defendant has represented that, due to external factors, its records are unreliable for purposes of identifying potential class members. Another risk in this case focuses on the question of whether the dialing system, which Plaintiff contends is a predictive dialer, is an "Automatic Telephone Dialing System" under the TCPA.  As an initial matter, on July 10, 2015, the FCC released an omnibus declaratory ruling clarifying numerous relevant issues affecting the TCPA, including definition of an ATDS under the statute[1]—which was overturned in part in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018).  Following the D.C. Circuit's decision in *ACA Int'l,* courts have been split on what constitutes an ATDS under the TCPA. The risks associated with this case were highlighted when in July the Supreme Court agreed to hear a case involving a circuit split that exists as to the appropriate definition of an ATDS under the TCPA.  *Duguid v. Facebook, Inc.*, No. 17-15320 (9th Cir.), *cert. granted* July 9, 2020.

Class certification is also far from automatic in TCPA cases.  *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 U.S. Dist. LEXIS 166117, at *3 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation), *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action), *and Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 U.S. Dist. LEXIS 174222 (N.D. Ill. Dec. 6,

---

[1] *See* https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf.

2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) *and Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same). Even if the class were certified, the Plaintiff would still have a substantial obstacle regarding FCI's liability.

While Ms. Legere-Gordon disputes each these defenses, and believes the authorities relied upon by FCI apply to a set of facts unique to those particular cases, her likelihood of success at trial is far from certain. Accordingly, her decision to settle his claims, and the claims of the members of the class, is reasonable. *See Bennett v. Behring Corp*., 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (noting that the plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for the plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

Regarding the fourth factor, the records shared and analyzed by the expert for the Plaintiff demonstrate that the Plaintiff would allege more than 33,000 potentially violative calls at issue. Under the TCPA's statutory damages provision, a *minimum* of $500 would be assessed for those calls, which would result in a $16,500,000 judgment. This is far in excess of the ability of FCI to pay, as confirmed by the financial documents shared by FCI in support of settlement. *See* Paronich Decl. at ¶ 9. Indeed, a significant portion of the settlement is being funded by FCI's insurance company, who is not without coverage defenses to the action. *Id.* at ¶ 10.

With respect to the fifth factor, as discussed above, the settlement was reached near the completion of discovery. However, the sixth factor supports settlement as the attorneys,

who are experienced in TCPA class actions, have supported the settlement. Paronich Decl. at ¶ 12, *See* <u>Exhibit 3</u>, Declaration of Gary M. Klinger ("Klinger Decl.") at ¶ 20. Finally, the seventh and eight factors are not something that the Court is able to consider until notice has been given.

## C. The Injunctive Relief Is Fair, Balanced, And Consistent With TCPA Class Action Settlements Approved In Similar Matters

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50. This is, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 283, 319 (3rd 1998) ("In assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.") (internal citation omitted).

Here, the settlement includes considerable injunctive relief requiring meaningful changes to FCI's calling practices. The benefit the Settlement Agreement provides to Members of the Settlement Classes is an injunction against further violations of the TCPA. In addition to other requirements, during the two-year period in which the injunction is in effect, Defendants will implement policies and procedures and training geared toward ensuring TCPA compliance. These important business changes underscore the favorable nature of the settlement. The injunctive relief obtained for the Settlement Classes comports

with the purpose of the TCPA — to protect consumers from unwanted and harassing calls. *See Mims v. Arrow Fin. Servs., LLC,* 132 S.Ct. 740, 745 (2012).

Moreover, the relief is consistent with the injunctive relief approved earlier this year in *Thomas v. Financial Corporation of America*, Civil Action No. 19-cv-152, ECF No. 91 (N.D. Tex. July 13, 2020), a TCPA case involving similar facts. There, the district court approved a Rule 23(b)(2) settlement that required the defendant to abide by injunctive terms that are substantively identical to those here. *Id.* Specifically, the defendant was required to:

> (a) update and improve its processes and procedures concerning compliance with the TCPA, including the implementation of a scrub of phone numbers placed by clients or otherwise obtained to determine whether the number is a cell phone (b) revise its written TCPA processes, procedures, and training materials (c) implement regular training for its employees concerning its TCPA processes and procedures (d) for a period of time of two years, with quarterly reports to class counsel and proof of compliance.

*Id.* Ms. Legere-Gordon has also struck a reasonable balance of obtaining significant injunctive relief weighed with a limited release which preserves the Class Members' individual claims against FCI as a number of TCPA injunctive relief settlements have done in the debt collection space. *See Schwyhart v. AmSher Collection Servs., Inc*., 2017 WL 1034201, *1 (N.D. Ala. Mar. 16, 2017) ("The Court finds that the Injunctive Class, as defined above, and for purposes of settlement, satisfies all of the requirements of Rule 23(a)"); *Grant v. Capital Mgmt. Servs., L.P*., No. 10-cv-2471-WQH (BGS), 2014 WL 888665 (S.D. Cal. Mar. 5, 2014) (TCPA case granting final approval of settlement agreement under which class members only received injunctive relief, but class members were not estopped from pursuing their individual claims); *Gutierrez-Rodriguez v. R.M.*

12

*Galicia, Inc.*, 2017 WL 4621188, *6 (S.D. Cal. Oct. 16, 2017) (approving TCPA class action settlement with similar injunctive relief).

The parties' settlement, therefore, falls within "a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in a particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 323; see also id. at 326 (a court "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation."). Indeed, "it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Id.* (internal citation omitted).

Additionally, FCI is a small business of limited net worth and does not have the resources to fund a considerably larger settlement. In addition, FCI possesses limited applicable insurance. Thus, financial realities dictate that a larger settlement would have been highly unlikely. *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 508 (W.D. Pa. 2003) ("Under these circumstances, even if the Class were to proceed to trial successfully against Rent–Way, it is highly doubtful that the Class would be able to secure a better recovery than that provided by the proposed Settlement. This factor therefore strongly favors approval of the proposed Settlement."); *In re AmeriSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 125 (D.N.J. 2002) ("The Defendants' inability to withstand greater judgment militates in favor of settlement."). Given the risks of proceeding and the limited available award,

13

obtaining significant injunctive relief while maintaining the class members' rights to proceed with individual lawsuits is fair, balanced, and reasonable.

## THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also Manual for Complex Litig.* at § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

"As a general matter, less precision is required of class definitions under Rule 23(b)(2) than under Rule 23(b)(3), where mandatory notice is required by due process." *Multi–Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621, 630 (C.D. Cal. 2007); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (holding that notice of right to opt-out of suit for money damages is required by the Due Process Clause); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) (stating that in contrast to certification of a subdivision (b)(3) class, "notice to the members of a(b)(2) class is not required and the actual membership of the class need not therefore be precisely delimited."). Because the relief requested in a (b)(2) class is prophylactic, enures to the benefit of each class member, and is based on accused conduct that applies uniformly to the class, notice to absent class members and an opportunity to opt out of the class is not required. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2558 (2011) (noting relief

sought in a (b)(2) class "perforce affect[s] the entire class at once" and thus, the class is "mandatory" with no opportunity to opt out).

Although notice is not required as part of a Rule 23(b)(2) settlement, the Parties have nonetheless agreed to a notice program that constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23. Under the agreed-upon plan, notice will be sent through multiple publications in USA Today. Settlement Agreement ¶ 12(A). In addition, the claims administrator will create and maintain a website that provides information, including court documents, regarding the Settlement to the Settlement Class, and a call center where the Settlement Class can obtain information. Settlement Agreement ¶ 12(B). Defendant will be responsible for all costs of notice. Settlement Agreement Settlement Agreement ¶ 11.

This publication notice program, while cost-effective, will advise class members of this settlement and their ability to bring individual claims against FCI should they desire. *See In Re: Enhanced Recovery Co., Tel. Consumer Prot. Act Litig.,* No. 6:13-md-02398-RBD-GJK, Doc. 105 (M.D. Fla. Jan. 29, 2015) (approving parties' notice plan in TCPA class actions settlement, which consisted of publication notice). In fact, this same notice program was utilized in *Thomas v. Financial Corporation of America*, Civil Action No. 19-cv-152, ECF No. 91 (N.D. Tex. July 13, 2020). In sum, the parties' notice plan ensures

that class members' due process rights are amply protected, is reasonable under the circumstances, and should be approved. See Fed. R. Civ. P. 23(c)(2)(A).[2]

## THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

### A. The Members Of Each Class Are So Numerous That Joinder Of All Of Them Is Impracticable

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)).    The large number of persons in the Settlement Classes renders joinder impracticable. *See McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 674 (W.D. Wash. 2010) (finding numerosity satisfied for class of twenty-seven members after considering several factors including judicial economy and the ability of the members to file individual suits); *see also Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc*., 303 F.R.D. 337, 345 (E.D. Cal. 2014) (numerosity requirement has been met with 88 members).

---

[2] Under Rule 23(e), a court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." See Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  Accordingly, "[t]he adequacy of class notice is measured by reasonableness," and "[t]he notice must provide the class members with information reasonably necessary to make a decision whether to remain a class member and be bound by the final judgment or opt out of the action." *Roundtree v. Bush Ross, P.A*., 2015 WL 5559461, a *1 (M.D. Fla. Sept. 18, 2015) (*quoting Faught v. Am. Home Shield Corp*., 668 F.3d 1233, 1239 (11th Cir. 2011)).

Here, plaintiff's expert estimated there are 33,172 class members. Paronich Decl. at ¶ 11. While, this number is disputed by FCI, joinder is impracticable. Thus, both classes satisfy Rule 23's numerosity requirement.

## B. Questions Of Law And Fact Are Common To All Class Members

The commonality requirement of Rule 23(a)(2) is satisfied because there are many questions of law and fact common to the Settlement Class that focus on Defendant's common practices of sending automated calls to cell phones without consent to do so. *See Stern v. DoCircle, Inc*., No. SACV 12-2005 AG JPRX, 2014 WL 486262, at *4 (C.D. Cal. Jan. 29, 2014) (finding the steps Defendant took to comply with TCPA, and whether Defendant can be held to have negligently or willfully violated the TCPA when it took those steps, are factual and legal issues common to all class members); *Whitaker v. Bennett Law, PLLC*, No. 13-CV-3145-L NLS, 2014 WL 5454398, at *5 (S.D. Cal. Oct. 27, 2014) (finding core issue of whether Defendant used an ATDS or prerecorded or artificial voice message to make unsolicited calls is common to all putative class members, and its resolution is central to the validity of each of their claims); *Reliable Money Order, Inc., v McKnight Sales Co., Inc.,* 281 F.R.D. 327, 332-33 (E.D. Wis. 2012) (finding commonality requirement satisfied where class members all alleged they received faxes in violation of the TCPA and the events surrounding the transmission of each fax were identical). Common issues of fact and law include whether Defendant's conduct violates TCPA provisions prohibiting companies from placing autodialed calls without consent. Due to the numerous common questions of law and fact among the proposed class, the commonality requirement is satisfied.

## C. Ms. Legere-Gordon's Claims Are Typical Of The Claims Of Class Members

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The Ninth Circuit does not require the named plaintiff's injuries to be identical with those of the other class members, but only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same injurious course of conduct." *Hanon*, 976 F.2d at 666 (quotation and internal marks omitted).

Plaintiff's claims are typical of the claims of other Class members because they arise from the same conduct of Defendant—alleged violations of the TCPA's regulations regarding automated calling—and are based on the same legal theories.  In such circumstances, the typicality element is satisfied. *See, e.g., Agne v. Papa John's Int'l*, 286 F.R.D. 559, 569 (W.D. Wash. Nov. 9, 2012) (finding typicality satisfied where the Plaintiffs' claims, "like all class members' claims, [arose] from text marketing campaigns commissioned by Papa John's franchisees and executed by the same marketing vendor …"); *CE Design v. Beaty Const., Inc.*, 07 C 3340, 2009 WL 192481, at *5 (N.D. Ill. Jan. 26, 2009) (typicality satisfied where plaintiffs and class members all alleged violations of the TCPA).

**D. Ms. Legere-Gordon And Her Counsel Will Fairly And Adequately Protect The Interests Of Class Members**

The final Rule 23(a) prerequisite requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor has two components. First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class. *Lerwill v. Inflight Motion Pictures*, 582 F.2d 507, 512 (9th Cir. 1978).

Here, Plaintiff has no interests that are antagonistic to or in conflict with persons in the Settlement Class she seeks to represent and have a substantial interest in the outcome of this action, since they all received the same allegedly unlawful calls. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 625–26 (1997) (courts look simply at whether the representatives' interests are in any way antagonistic to or in conflict with those of the class members). In addition, Class Counsel are active practitioners with substantial experience in consumer law and class action litigation, including cases very similar to this one. *See* Exhibits 2 and 3. The requirements of Rule 23(a) therefore are satisfied.

**E. The Questions Of Law And Fact Common To The Members Of The Damages Subclass Predominate Over Any Questions Potentially Affecting Only Individual Members**

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 634 (1997). "Under Rule 23(b)(3) it is not necessary that all

questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc*., 382 F.3d 1241, 1254 (11th Cir. 2004). Indeed, "[p]redominance means that the issues in a class action must be capable of generalized proof such that the issues of the class predominate over those issues that are subject only to individualized proof." *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp*., 2008 WL 3850657, *4 (M.D. Fla. Aug. 14, 2008). Correspondingly, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022; *see also Carriuolo*, 823 F.3d at 985.

Here, the central legal issue affecting class members is whether the calls FCI placed were made using an ATDS without prior express consent in violation of the TCPA. Additional common questions include whether FCI used an ATDS as defined by the TCPA, and whether FCI is liable for "wrong number" calls – that is, whether FCI violated the TCPA by placing autodialed calls intended for persons from whom it was attempting to collect a debt, but whose phone numbers were reassigned. These common questions predominate over any individual issues. *See Gehrich v. Chase Bank USA, N.A*., No. 12 C 5510, 2016 U.S. Dist. LEXIS 69520 at *5 (N.D. Ill. May 27, 2016) ("The common questions listed above are the main questions in this case, they can be resolved on a class-wide basis without any individual variation, and they predominate over any individual issues. The proposed class satisfies Rule 23(b)(3).").

**F. The Class Meets The Requirements Of Rule 23(B)(2)**

Under Rule 23(b)(2), certification is appropriate where a defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) is satisfied where "[t]he injunctive relief sought by plaintiff[] would apply to the class as a whole" and "the claims in th[e] suit would not entitle named or unnamed class members to any form of individualized injunctive relief." *Johnson v. Shaffer*, No. 2:12–cv–1059 KJM AC, 2013 WL 5934156, at *13 (E.D. Cal. Nov. 1, 2013). Defendant's practices of calling cellular telephones in violation of the TCPA, impact each Member of the Settlement Class, and all prospective relief inures to the benefit of the Settlement Class as a whole.

## THIS COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING

The last step in the settlement approval process is a final approval hearing at which the Court may hear all evidence and argument necessary to make its final settlement evaluation. Fed. R. Civ. P. 23(e)(2). Proponents of the settlement may offer argument in support of final approval. In addition, class members who have properly objected to the settlement may be heard at this hearing. This Court will determine after the final approval hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

## V. CONCLUSION

Ms. Legere-Gordon respectfully requests that this Court (1) conditionally certify the settlement class, (2) conditionally approve the parties' settlement as fair, adequate,

reasonable, and within the reasonable range of possible final approval, (3) appoint Ms. Legere-Gordon as the class representative, (4) appoint Gary M. Klinger of Mason Lietz & Klinger, LLP and Anthony Paronich of Paronich Law, P.C. as class counsel, (5) approve the notice program proposed by the parties, and confirm that it is the best practicable under the circumstances and that it satisfies due process and Rule 23, (6) set a date for a final approval hearing, and (7) set deadlines for members of the settlement class to submit claims for compensation, and to object to or exclude themselves from the parties' settlement.

A proposed preliminary approval order is attached as <u>Exhibit 4</u>.


**DATED:** October 19, 2020

Respectfully Submitted,

By: <u>    /s/ Anthony I. Paronich    </u>

Eric B. Swartz
Jones & Swartz PLLC
623 W. Hays St.
Boise, ID 83702
Ph. 208-489-8989
Fax 208-489-8988
www.jonesandswartzlaw.com
Anthony I. Paronich (pro hac vice)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

jarrett@hughesellzey.com

Gary M. Klinger
**Mason Lietz & Klinger LLP**
227 W. Monroe Street, Suite 2100

Chicago, IL 60630
312-283-3814
Email: gklinger@masonllp.com

## **CERTIFICATE OF SERVICE**

I certify a copy of the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system in accordance with the protocols for e-filing in the United States District Court for the District of Idaho, on <u>October 19, 2020</u> and will be served on all counsel of record who have consented to electronic notification *via* CM/ECF.


    */s/ Anthony I. Paronich*
Anthony I. Paronich