UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

----oo0oo----

| | |
|---|---|
| NAOMI LEGERE-GORDON, individually and on behalf all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FIRSTCREDIT INCORPORATED,<br><br>　　　　　Defendant. | No. 1:19-cv-360 WBS<br><br><br>MEMORANDUM AND ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |

----oo0oo----

　　　　Plaintiff Naomi Legere-Gordon, individually and on behalf of all other similarly situated persons, brought this putative class action against defendant Firstcredit Incorporated ("defendant" or "FCI"), alleging violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227. (See Compl. (Docket No. 1).)  Plaintiff has filed an unopposed motion for preliminary approval of a class action settlement.  (Mot. for Prelim. Approval (Docket No. 38).)  On December 9, 2020, the court held a hearing on plaintiff's motion.  (See Docket No. 40.)

1

After expressing concern with the parties' proposed notice plan, the court continued the hearing to January 25, 2021, so the parties could negotiate a new plan for issuing notice to members of the class. (See id.)  The parties submitted a Joint Status Report containing an updated proposed notice plan on January 19, 2021. (See Joint Status Report (Docket No. 41).)  Based on plaintiff's motion, the court's December 9, 2020, and January 25, 2021 hearings, and the parties' Joint Status Report, the court hereby issues the following Order granting plaintiff's motion for preliminary approval.

I.   Factual and Procedural Background

Plaintiff filed her complaint in this court on September 18, 2019. (See Compl.)  The complaint alleges that plaintiff received calls on her cellular phone from a number associated with defendant on "numerous" occasions. (See Compl. ¶¶ 25-29.)  Upon answering these calls, plaintiff alleges, a prerecorded message would state "Thank you for calling FCI . . . ." (See id.)  Though plaintiff never gave permission for FCI to contact her, she alleges that defendant continued to call her cellular phone anyway. (See Compl. ¶¶ 30-31.)  Plaintiff's complaint further alleges that she represents a class of persons throughout the United States to whom defendant placed, or caused to be placed, similar calls over the last four years. (See Compl. ¶¶ 43-70.)

The TCPA prohibits the use of automatic telephone dialing systems ("ATDS") to call any cellular telephone number in the absence of an emergency or prior express consent of the receiving party. See 47 U.S.C. § 227(b)(1)(A)(iii).  Based on

1  the frequency, number, nature, and character of the calls that

2  she received, plaintiff claims that defendant utilized an ATDS to

3  call her and other class members' cellular phones in violation of

4  the TCPA.  (See Compl. ¶¶ 34-42, 71-73.)  Plaintiff alleges that

5  this ATDS employed a complex set of algorithms to automatically

6  generate and call numbers in a manner that "predicted" the time

7  when a consumer would answer the phone and be available to take

8  the call.  (See id.)

9       Defendant filed an answer denying liability.  (See

10  Docket No. 14.)  Over the next year, the parties engaged in

11  discovery before participating in an all-day mediation before the

12  Hon. James Ware (Ret.) of JAMS on September 15, 2020.  (See Decl.

13  of Anthony Paronich ("Paronich Decl.") ¶ 12 (Docket No. 38-2).)

14  The parties reached a tentative agreement through this mediation,

15  and engaged in further negotiations over the next month to

16  produce the final settlement agreement before the court today

17  (the "Settlement Agreement").  (See id.)

18       As proposed, the Settlement Agreement contemplates a

19  release of all claims for injunctive relief asserted in this

20  action by the settlement class, defined as

21       All natural and juridical persons within the
     United States (1) to whom FCI placed, or
22       caused to be placed, a call, (2) directed to
     a number assigned to a cellular telephone
23       service, but not assigned to the intended
     recipient of Defendant's calls, (3) by using
24       an automatic telephone dialing system or an
     artificial or prerecorded voice, (4) from
25       September 18, 2015 through the date the
     Order of Preliminary Approval of Class
26       Action Settlement is entered by the Court.

27  (See Mot. for Prelim. Approval, Ex. 1 ("Settlement Agreement") at

28  3-4 (Docket No. 38-1).)  The proposed settlement class consists

3

1  of approximately 33,172 recipients of defendants' calls.  (See

2  Paronich Decl. ¶ 11.)

3          The TCPA's statutory damages provision awards a minimum

4  of $500 in damages per violative call.  See 47 U.S.C. §

5  227(b)(3)(B).  Given the number of violative calls at issue here,

6  plaintiff estimates that a judgment in this case would total at

7  least $16,500,000.  (See Paronich Decl. ¶ 9.)  The parties

8  represent that, based on financial documents produced by

9  defendant in discovery, this amount far exceeds defendant's

10  ability to pay.  (See id.)

11          Accordingly, the settlement does not provide class

12  members with any monetary relief, and instead seeks injunctive

13  relief requiring defendant to implement changes to its calling

14  practices.  (See Settlement Agreement.)  Specifically, defendant

15  must determine which phone numbers on its call lists are cellular

16  numbers and scrub those numbers from its lists (unless defendant

17  has a good faith basis to believe that consent to call the number

18  has been given); revise its TCPA processes, procedures, and

19  training materials and implement training for its employees

20  regarding these processes and procedures; and issue quarterly

21  reports concerning TCPA litigation and proof of compliance to

22  class counsel throughout the 2-year duration of the injunctive

23  period.  (See id. at Ex. 5.)

24          In exchange for this injunctive relief, class members

25  waive their right to bring claims for injunctive relief or to

26  participate in any class or representative proceeding related to

27  claims that they received phone calls from defendant in violation

28  of the TCPA between September 18, 2015, and the date of

1  preliminary approval.  (See id. ¶ 21.)  The settlement does not

2  require class members to release any individual claims for

3  damages they may have against FCI.  (See id.)

4       The Settlement Agreement further provides for an award

5  of $180,000 in attorney's fees and costs, subject to court

6  approval, and an incentive award for plaintiff of $3,500. (See

7  Settlement Agreement at 11.)  The settlement states that class

8  counsel will be responsible for reimbursing the settlement

9  administrator for all costs of settlement administration.  (See

10  id. ¶ 11.)

11       The proposed Notice of Class Settlement calls for

12  notice to be published in summary form in two consecutive Monday

13  editions of USA Today.  (See id. ¶ 12.)  This summary will direct

14  members of the settlement class to a website created by the

15  settlement administrator.  (Id.)  The settlement administrator

16  will also create a call center reachable at a toll-free number

17  that is  dedicated to answering class members' questions and to

18  providing information regarding the settlement.  (Id.)  As

19  proposed, the Notice published on the settlement website will

20  inform class members of the injunctive relief provided by the

21  settlement, of their right to object and attend a fairness

22  hearing, that the settlement will waive their right to pursue

23  claims for damages in a class action setting while preserving

24  their right to pursue individual damages claims against

25  defendant.  (See id. at Ex. 4.)

26  II.  Discussion

27       Federal Rule of Civil Procedure 23(e) provides that

28  "[t]he claims, issues, or defenses of a certified class may be

settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).  "To vindicate the settlement of such serious claims, however, judges have the responsibility of ensuring fairness to all members of the class presented for certification."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  "Where [] the parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)."  Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1048 (9th Cir. 2019) (citation and internal quotations omitted).

The approval of a class action settlement takes place in two stages.  In the first stage, "the court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class."  Ontiveros v. Zamora, No. 2:08-567 WBS DAD, 2014 WL 3057506, at *2 (E.D. Cal. July 7, 2014).  In the second, the court will entertain class members' objections to (1) treating the litigation as a class action and/or (2) the terms of the settlement agreement at the fairness hearing.  Id.  The court will then reach a final determination as to whether the parties should be allowed to settle the class action following the fairness hearing.  Id.

Consequently, this order "will only determine whether the proposed class action settlement deserves preliminary approval and lay the groundwork for a future fairness hearing." See id. (citations omitted).

A.    Class Certification

To be certified, the putative class must satisfy both

the requirements of Federal Rule of Civil Procedure 23(a) and
(b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir.
2013).  Each will be discussed in turn.

1.  Rule 23(a)

In order to certify a class, Rule 23(a)'s four
threshold requirements must be met: numerosity, commonality,
typicality, and adequacy of representation.  Fed. R. Civ. P.
23(a).  "Class certification is proper only if the trial court
has concluded, after a 'rigorous analysis,' that Rule 23(a) has
been satisfied."  Wang v. Chinese Daily News, Inc., 737 F.3d 538,
542-43 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes,
564 U.S. 338, 351 (2011)).

a.  Numerosity

While Rule 23(a)(1) requires that the class be "so
numerous that joinder of all members is impracticable," Fed. R.
Civ. P. 23(a)(1), it does not require "a strict numerical cut-
off."  McCurley v. Royal Seas Cruises, Inc., 331 F.R.D. 142, 167
(S.D. Cal. 2019) (citations omitted).  Generally, "the numerosity
factor is satisfied if the class compromises 40 or more members."
Id. (quoting Celano v. Marriott Int'l, Inc., 242 F.R.D. 544, 549
(N.D. Cal. 2007)).  Here, plaintiff's expert estimates that there
are 33,172 class members.  (See Paronich Decl. ¶ 11.)  The
numerosity element is therefore satisfied.

b.  Commonality

Next, Rule 23(a) requires that there be "questions of
law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).
Rule 23(a)(2) is satisfied when there is a "common contention . .
. of such a nature that it is capable of classwide resolution --

7

which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350. "Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution. So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." Wang, 737 F.3d at 544 (citing id.).

Here, the claims implicate common questions of law and fact because they are premised on conduct that was directed toward all class members equally. All class members are alleged to have received calls from defendant on their cellular telephone through use of an ATDS without their consent. (See Compl. ¶¶ 34-42, 71-73.) The class members therefore share several factual questions, including whether defendant called their cellular telephone, whether that call was generated using an ATDS, and whether they had given prior consent. (See id.) These factual questions give rise to a common legal question: whether defendant's calls violated the TCPA, 47 U.S.C. § 227.

Generally, "challeng[ing] a policy common to the class as a whole creates a common question whose answer is apt to drive the resolution of the litigation." Ontiveros, 2014 WL 3057506, at *5. Even if individual members of the class would be entitled to different amounts of damages because, for instance, they received a different number of autodialed calls from defendant, "the presence of individual damages cannot, by itself, defeat class certification." Leyva, 716 F.3d at 514 (quoting Dukes, 564 U.S. at 362). Accordingly, these common questions of law and

8

1  fact satisfy Rule 23(a)'s commonality requirement.

2                    c.    Typicality

3         Rule 23(a) further requires that the "claims or

4  defenses of the representative parties [be] typical of the claims

5  or defenses of the class." Fed. R. Civ. P. 23(a)(3). The test

6  for typicality is "whether other members have the same or similar

7  injury, whether the action is based on conduct which is not

8  unique to the named plaintiffs, and whether other class members

9  have been injured by the same course of conduct." Sali v. Corona

10 Reg'l Med. Ctr., 909 F.3d 996, 1006 (9th Cir. 2018) (quoting

11 Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)).

12 Here, the named plaintiff satisfies the typicality requirement,

13 as she and the other class members all allegedly received the

14 same calls from defendant in violation of the TCPA. (See Compl.

15 ¶¶ 34-42, 71-73.)

16                    d.    Adequacy of Representation

17        Finally, Rule 23(a) requires that "the representative

18 parties will fairly and adequately protect the interests of the

19 class." Fed. R. Civ. P. 23(a)(4). Rule 23(a)(4) "serves to

20 uncover conflicts of interest between named parties and the class

21 they seek to represent" as well as the "competency and conflicts

22 of class counsel." Amchem Prods., Inc. v. Windsor, 521 U.S. 591,

23 625, 626 n.20 (1997). The court must consider two factors: (1)

24 whether the named plaintiff and his counsel have any conflicts of

25 interest with other class members and (2) whether the named

26 plaintiff and his counsel will vigorously prosecute the action on

27 behalf of the class. In re Hyundai and Kai Fuel Econ. Litig.,

28 926 F.3d 539, 566 (9th Cir. 2019) (quoting Hanlon v. Chrysler

1   Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)).

2                       i.   Conflicts of Interest

3           The first portion of the adequacy inquiry considers

4   whether plaintiff's interests are aligned with those of the

5   class.  "[A] class representative must be part of the class and

6   possess the same interest and suffer the same injury as the class

7   members."  Amchem, 521 U.S. at 625-26 (internal modifications

8   omitted).

9           The named plaintiff's interests appear to be generally

10  aligned with those of the class, as she allegedly received the

11  same calls from defendant using an ATDS.  (See generally Compl.)

12  However, plaintiff alone stands to benefit for her participation

13  in this litigation by receiving an incentive award of $3,500.

14  (Settlement Agreement ¶ 29.)  The use of an incentive award

15  raises the possibility that plaintiff's interest in receiving

16  that award via settlement will cause her interests to diverge

17  from the class's, especially considering that the rest of the

18  class will not receive monetary compensation.  Staton, 327 F.3d

19  at 977-78.  Consequently, the court must "scrutinize carefully

20  the awards so that they do not undermine the adequacy of the

21  class representatives."  Radcliffe v. Experian Info. Sys., Inc.,

22  715 F.3d 1157, 1163 (9th Cir. 2013).

23          Plaintiff's requested incentive award of $3,500

24  represents an award that is different in kind and substantially

25  greater in amount than the benefits that will accrue to other

26  class members, given that the Settlement Agreement only provides

27  class members with injunctive relief.  (See Settlement Agreement

28  ¶ 13.)  However, incentive awards "are intended to compensate

class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958-59 (9th Cir. 2009).  Indeed, the Ninth Circuit has consistently recognized incentive awards are "fairly typical" way to "compensate class representatives for work done on behalf of the class" or "to make up for financial or reputational risk undertaken in bringing the action," id., and other district courts in this circuit have found incentive awards to be proper even when a class is certified only for injunctive relief under Rule 23(b)(2), see, e.g., Grant v. Capital Mgmt. Servs., L.P., No. 10-cv-2471-WQH (BGS), 2014 WL 888665, at *8 (S.D. Cal. Mar. 5, 2014) (approving incentive award of $5,000 as part of settlement seeking only injunctive relief under Rule 23(b)(2)).

Because the Settlement Agreement expressly preserves the class members' ability to pursue any individual claims for monetary relief against defendant that they may have based on the phone calls in question (see Settlement Agreement at Ex. 2), the court does not find that plaintiff's requested incentive payment necessarily gives rise to a conflict of interest between plaintiff and the rest of the class.

The court emphasizes that this finding is only a preliminary determination.  Plaintiff represents that she will formally seek the incentive award through a separate motion, to be heard at the final approval hearing.  (Mot. for Preliminary Approval at 4.)  At that time, plaintiff should be prepared to provide additional evidence to convince the court that an

incentive award is justified in this case as a means of "compensat[ing] [plaintiff] for work done on behalf of the class" or of making up "for financial or reputational risk undertaken in bringing the action," especially considering that the unnamed class members will receive no compensation.  See Rodriguez, 563 F.3d at 958-59.  Plaintiff should also be prepared to show that the incentive award she requests is not grossly disproportionate to the average amount individual class members could expect to receive by bringing individual claims for money damages against defendant, such that it would cause her interests to diverge from those of other class members.  See id.

### ii.  Vigorous Prosecution

The second portion of the adequacy inquiry examines the vigor with which the named plaintiff and her counsel have pursued the class's claims.  "Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." Hanlon, 150 F.3d at 1021, overruled on other grounds by Dukes, 564 U.S. at 338.

Here, class counsel appear to be experienced class action litigators fully qualified to pursue the interests of the class.  (See Paronich Decl. ¶¶ 4-7; Decl. of Gary M. Klinger ("Klinger Decl.") ¶¶ 4-17 (Docket No. 38-3).)  Class counsel represent that they have litigated dozens of TCPA class actions and other class actions involving violations of privacy as lead counsel in state and federal court.  (See Paronich Decl. ¶ 7 (citing cases); Klinger Decl. ¶ 8-15 (citing cases).)

Furthermore, class counsel have carefully vetted their clients' and defendants' claims through rigorous legal analysis. (See Mot. for Prelim. Approval at 8-14; Paronich Decl. ¶ 8-12; Klinger Decl. ¶ 18-21.)  Counsels' experience, coupled with the careful vetting of their client's claims, suggest that they are well-equipped to handle this case.  Accordingly, the court finds that plaintiff and plaintiff's counsel are adequate representatives of the class.

2.  Rule 23(b)

After fulfilling the threshold requirements of Rule 23(a), the proposed class must satisfy the requirements of one of the three subdivisions of Rule 23(b).  Leyva, 716 F.3d at 512. Plaintiff seeks provisional certification under Rule 23(b)(2), which provides for class certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).

"The key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted — the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'"  B.K. by next friend Tinsley v. Snyder, 922 F.3d 957, 971 (9th Cir. 2019), cert. denied sub nom. Faust v. B. K. By Tinsley, 140 S. Ct. 2509, 206 L. Ed. 2d 463 (2020) (quoting Dukes, 564 U.S. 338, 360 (2011)).  "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize

13

1    class certification when each individual class member would be

2    entitled to a different injunction." Id. (quoting Dukes, 564

3    U.S. at 360 (emphasis in original omitted)).

4            Here, the Settlement Agreement states that the parties

5    will jointly request that the court enter an injunction requiring

6    defendant to remove cellular telephone numbers from its call

7    lists unless defendant has a good faith basis to believe consent

8    to call that number has been provided. (See Settlement Agreement

9    at Ex. 2.)  This injunctive relief is appropriate with respect to

10   the class as a whole because defendants' actions were generally

11   applicable to the entire class: each putative class member has

12   received calls from defendant that were automatically generated

13   using an ATDS that "predicted" when he or she would be likely to

14   answer and available to talk, without prior consent (see Compl.

15   ¶¶ 34-42, 71-73). See Fed. R. Civ. P. 23(b)(2).  The uniformity

16   of this conduct with respect to each putative class member

17   permits it to be "enjoined or declared unlawful . . . as to all

18   of the class members" and permits relief to be afforded to all

19   class members with a single injunction. See Snyder, 922 F.3d at

20   971.

21           Plaintiff's complaint also seeks relief "awarding

22   Plaintiff and the class damages under 47 U.S.C. § 227(b)(3)(B)."

23   (See Compl. at 13.)  Generally, Rule 23(b)(2) "does not authorize

24   class certification when each class member would be entitled to

25   an individualized award of monetary damages." Dukes, 564 U.S. at

26   360-61.  However, the Settlement Agreement does not provide class

27   members with any monetary relief, and instead expressly preserves

28   their right to pursue individual claims for damages against

14

1  defendant in the future.  (See Settlement Agreement at Ex. 2.)

2  The court therefore finds that certification under Rule 23(b)(2)

3  is appropriate.  See Grant, 2014 WL 888665, at *2 (certifying

4  class under Rule 23(b)(2) where settlement provided only

5  injunctive relief for alleged violations of the TCPA).

6           3.   Rule 23(c)(2) Notice Requirements

7           Under Rule 23(c)(2), whether notice to class members of

8  certification under Rule 23(b)(2) must be provided is left to the

9  district court's discretion.  See Fed. R. Civ. P. 23(c)(2)(A)

10  ("For any class certified under Rule 23(b)(1) or (b)(2), the

11  court may direct appropriate notice to the class." (emphasis

12  added)); Equal Opportunity Emp't Comm'n v. Gen. Tel. Co. of Nw.,

13  Inc., 599 F.2d 322, 334 (9th Cir. 1979) ("When an action is

14  certified under Rule 23(b)(2) . . . absent class members are not

15  required to receive notice or to have the opportunity to opt-out

16  of the suit.").

17           Even if the court determines that notice of class

18  certification under Rule 23(b)(2) is not necessary, notice of a

19  class action settlement may still be required under Rule 23(e) if

20  the proposed settlement would bind absent class members.  See

21  Fed. R. Civ. P. 23(e).  The court will therefore evaluate whether

22  and what kind of notice is required in the next section, when it

23  evaluates the fairness the settlement under Rule 23(e).

24      B.   Rule 23(e): Fairness, Adequacy, and Reasonableness of
             Proposed Settlement
25

26           Because the proposed class preliminarily satisfies the

27  requirements of Rule 23(a) and (b), the court must consider

28  whether the terms of the parties' settlement appear fair,

15

adequate, and reasonable.  See Fed. R. Civ. P. 23(e)(2).  The court must consider four factors under the rule: whether "(1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other."  Id.  The Ninth Circuit has also identified additional factors, including

> The strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

See Staton, 327 F.3d at 959.  Many of these factors cannot be considered until the final fairness hearing; accordingly, the court's review will be confined to resolving any "'glaring deficiencies' in the settlement agreement."  Syed, 2019 WL 1130469, at *7 (citations omitted).

### 1.   Adequate Representation

The court must first consider whether "the class representatives and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).  This analysis is "redundant of the requirements of Rule 23(a)(4) . . . ."  Hudson v. Libre Tech., Inc., No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, at *5 (S.D. Cal. May 13, 2020) (quoting Rubenstein, 4 Newberg on Class Actions § 13:48 (5th ed.)) see also In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting similarity of inquiry under Rule 23(a)(4) and Rule

1    23(e)(2)(A)).

2        Because the Court has found that the proposed class

3 satisfies Rule 23(a)(4) for purposes of class certification, the

4 adequacy factor under Rule 23(e)(2)(A) is also met. See Hudson,

5 2020 WL 2467060, at *5.

6        2.   Negotiations of the Settlement Agreement

7        Counsel for both sides appear to have diligently

8 pursued settlement after thoughtfully considering the strength of

9 their arguments and potential defenses.  The parties participated

10 in an arms-length mediation before an experienced mediator, Hon.

11 James Ware (Ret.), on September 15, 2020, which resulted in a

12 tentative settlement agreement.  (Paronich Decl. ¶ 12.)  After

13 further negotiations, the parties were able to finalize and

14 execute the Settlement Agreement on October 19, 2020.  (See id.;

15 Settlement Agreement.)  Given the sophistication of plaintiff's

16 counsel and the parties' representation that the settlement

17 reached was the product of arms-length bargaining, the court does

18 not question that the proposed settlement is in the best interest

19 of the class.  See Fraley v. Facebook, Inc., 966 F. Supp. 2d 939,

20 942 (N.D. Cal. 2013) (holding that a settlement reached after

21 informed negotiations "is entitled to a degree of deference as

22 the private consensual decision of the parties" (citing Hanlon,

23 150 F.3d at 1027)).

24        3.   Adequate Relief

25        In determining whether a settlement agreement provides

26 adequate relief for the class, the court must "take into account

27 (i) the costs, risks, and delay of trial and appeal; (ii) the

28 effectiveness of any proposed method of distributing relief to

the class, including the method of processing class-member

claims; (iii) the terms of any proposed award of attorney's fees,

including timing of payment; and (iv) any [other] agreement[s]"

made in connection with the proposal.  See Fed. R. Civ. P.

23(e)(2)(C); Baker v. SeaWorld Entm't Inc., No. 14-cv-02129-MMA-

AGS, 2020 WL 4260712, at *6-8 (S.D. Cal. Jul. 24, 2020).

A recent decision by the Ninth Circuit, Koby v. ARS

Nat. Servs., Inc., 846 F.3d 1071 (9th Cir. 2017), serves as a

useful guide in analyzing whether the relief in this case is

adequate.  In Koby, the named plaintiffs sued ARS on behalf of a

class of consumers under the Fair Debt Collection Practices Act

("FDCPA").  See Koby, 846 F.3d at 1074.  They alleged that ARS

violated the FDCPA by leaving voicemail messages in which the

callers failed to disclose (1) that they worked for ARS, (2) that

ARS is a debt collector, or (3) that the purpose of the call was

to collect a debt.  See id.  The parties reached a settlement

agreement in which they agreed to seek certification of a

nationwide, settlement-only class under Rule 23(b)(2).  See id.

As in this case, the proposed settlement sought only

injunctive relief on behalf of the class, which consisted of

anyone in the United States who had received violative voicemails

from ARS between April 2008 and August 2011.  Id.  Also like this

case, the proposed settlement waived class members' right to

bring a class action against ARS in the future while preserving

their right to bring individual claims for damages.  Id. at 1075.

After conducting a fairness hearing, the magistrate judge

approved the settlement, finding that it was "fair, reasonable,

and adequate" under Rule 23(e).  See id.

18

1            The Ninth Circuit reversed, holding that the magistrate
2    judge had abused her discretion in approving the settlement
3    because the settlement required class members to waive their
4    right to pursue claims for damages against ARS as part of a class
5    action in exchange for injunctive relief that was "of no real
6    value."  See id. at 1079.  The court found that the injunction
7    would not benefit class members because ARS had already
8    voluntarily adopted a voicemail message similar to the one
9    contained in the injunction before litigation began, and thus the
10   injunction would not require ARS to do adopted a anything it was
11   not already doing.  See id. at 1080.

12           The court in Koby also found that the injunction would
13   not benefit the class members because there was a mismatch
14   between the class definition and the group of consumers who would
15   receive the benefits of the injunctive relief.  See id. at 1079.
16   While the class was defined to include consumers who had
17   previously received calls from ARS, the injunction merely
18   dictated certain disclosures that ARS would have to make when
19   leaving future voicemails.  See id.  According to the court,
20   there was no guarantee that a previous target of ARS' calls would
21   necessarily be a target of their calls in the future, given that
22   the consumers in the class had been contacted regarding debts
23   that were, at that point, two to five years old.  See id. at
24   1079-80.

25           Though the terms of the settlement rejected by the
26   Ninth Circuit in Koby are remarkably similar to the terms of the
27   proposed settlement here, two crucial distinctions exist.  First,
28   unlike the class members in Koby, the class members here will not

be required to give up their individual claims for damages in exchange for the injunctive relief outlined in the Settlement Agreement. See id. at 1079. Second, the terms of the injunctive relief here will require FCI to scrub its call list of all cellular numbers for whom FCI does not have a good faith belief that consent to call has been provided, including those numbers already called. (See Settlement Agreement at Ex. 5.) Unlike the defendant in Koby, FCI has represented that scrubbing cellular numbers from its call lists is not an action that it would have taken in absence of the injunction provided by the settlement agreement. See Koby, 846 F.3d at 1080. The court therefore finds that the Settlement Agreement will provide real value to the class members here--value that they would not have otherwise gotten in absence of the settlement. See id.

Plaintiff's counsel represents that, given the strength of plaintiff's claims and defendants' potential exposure, the injunctive relief contained in the settlement provides a strong result for the class. (Paronich Decl. ¶¶ 9-12.) Indeed, at least two other district courts appear to have approved TCPA settlements that provided only injunctive relief to the class. See Thomas v. Fin. Corp. of Am., No. 19-cv-152-K (N.D. Tex. Jul. 13, 2020) (Docket No. 86); Grant, 2014 WL 888665, at *2. One of these settlements provided for an injunction that was nearly identical to the one here, in exchange for a release of class members' right to pursue damages claims as part of a class action. See Thomas v. Fin. Corp. of Am., No. 19-cv-152-K (N.D. Tex. Jul. 13, 2020) (Docket No. 86). Because the parties have represented that defendant does not have the financial

ability to withstand a class-wide judgment for monetary damages, the court agrees that the injunctive relief provided in the settlement represents an acceptable method of distributing relief, especially given the settlement's preservation of class members' right to pursue individual claims for damages against defendant.  See Baker v. SeaWorld Entm't, Inc., No. 14-cv-02129-MMA-AGS, 2020 WL 4260712, at *6-8 (S.D. Cal. Jul. 24, 2020). While this relief represents "more than the defendants feel those individuals are entitled to" and will potentially be "less than what some class members feel they deserve," the Settlement Agreement at least offers class members the prospect of some recovery.  See Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982) ("Undoubtedly, the amount of the individual shares will be less than what some class members feel they deserve but, conversely, more than the defendants feel those individuals are entitled to. This is precisely the stuff from which negotiated settlements are made.")

The court again emphasizes the preliminary nature of this determination.  Though the parties represent that defendant is not in a financial condition to withstand a classwide monetary judgment (see Mot. for Prelim. Approval at 13; Paronich Decl. ¶ 9), they should be prepared to present additional evidence of defendant's financial condition in advance of the final fairness hearing.  Plaintiff should also be prepared to present additional evidence indicating the likely amount class members would be likely to recover from defendant were they to proceed with an individual claim for damages, so that the court can more accurately determine whether absent class members will have an

1   incentive to bring individual claims and therefore assess the

2   value of the preservation of this right in the Settlement

3   Agreement.  See Koby, 846 F.3d at 1080-81.

4           The Settlement Agreement further provides for an award

5   of $180,000 in attorney's fees and costs, subject to court

6   approval.  (See Settlement Agreement at 11.)  If a negotiated

7   class action settlement includes an award of attorney's fees,

8   then the court "ha[s] an independent obligation to ensure that

9   the award, like the settlement itself, is reasonable, even if the

10  parties have already agreed to an amount."  In re Bluetooth

11  Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

12          The Ninth Circuit has recognized two different methods

13  for calculating reasonable attorney's fees: the lodestar method

14  and the percentage-of-recovery method.  See id.  The percentage-

15  of-recovery method is generally appropriate where the settlement

16  creates a common fund for distribution to the class because it

17  "simply awards the attorneys a percentage of the fund sufficient

18  to provide class counsel with a reasonable fee."  See Hanlon, 150

19  F.3d at 1029, overruled on other grounds by Dukes, 564 U.S. at

20  338.  The lodestar method, on the other hand, is generally

21  appropriate in cases seeking injunctive relief, like this one,

22  because it is often difficult or even impossible "to gauge the

23  net value of the settlement or any percentage thereof."  Id.

24          Under the lodestar method, the court multiplies the

25  number of hours reasonably expended by a reasonable hourly rate.

26  Id.  Class counsel must support its figures for the number of

27  hours expended and its hourly rate by adequate documentation.

28  Id.  "The resulting figure may be adjusted upward or downward to

1    account for several factors including the quality of the

2    representation, the benefit obtained for the class, the

3    complexity and novelty of the issues presented, and the risk of

4    nonpayment." Id.

5           Plaintiff's counsel has represented that they will be

6    filing a separate motion for attorney's fees and costs in the

7    amount of $180,000 pursuant to Federal Rule 23(h).  (Settlement

8    Agreement ¶ 28.)  Because the lodestar method will allow the

9    court to award attorney's fees even in the absence of a common

10   fund, the court does not find the Settlement Agreement's award of

11   attorney's fees to necessarily be unreasonable at this time.  See

12   Thomas, No. 19-cv-152-K (N.D. Tex. Jul. 13, 2020) (Docket No. 86)

13   (awarding $587,500 in attorney's fees in TCPA class action

14   settlement involving only injunctive relief); Grant, 2014 WL

15   888665, at *2 (awarding $475,000 in attorney's fees in TCPA class

16   action settlement involving only injunctive relief).  However,

17   the court will defer consideration of the reasonableness of

18   counsel's fees until the fee motion is filed.

19          Class counsel is cautioned that the reasons for the

20   attorney's fees should be explained further in that motion.

21   Factors considered in examining the reasonableness of the fee may

22   include: (1) whether the results achieved were exceptional; (2)

23   risks of litigation; (3) non-monetary benefits conferred by the

24   litigation; (4) customary fees for similar cases; (5) the

25   contingent nature of the fee and financial burden carried by

26   counsel; and (6) the lawyer's "reasonable expectations, which are

27   based on the circumstances of the case and the range of fee

28   awards out of common funds of comparable size."  See Vizcaino v.

1  Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002).

2          In light of the claims at issue, defendant's potential

3  exposure, defendant's apparent inability to pay a classwide

4  judgment, and the fact that the court will separately assess the

5  reasonableness of plaintiff's request for attorney's fees at a

6  later date, the court finds that, at this stage, the substance of

7  the settlement is fair to class members and "falls within the

8  range of possible approval."  See Tableware, 484 F. Supp. 2d at

9  1079.  Counsel has not directed the court to any other relevant

10  agreements that would alter this analysis.  The court therefore

11  finds that Rule 23(e)'s third factor is satisfied.  See Fed. R.

12  Civ. P. 23(e)(C).

13              4.   Equitable Treatment of Class Members

14          Finally, the court must consider whether the Settlement

15  Agreement "treats class members equitably relative to each

16  other."  See Fed. R. Civ. P. 23(e)(2)(D).  In doing so, the Court

17  determines whether the settlement "improperly grant[s]

18  preferential treatment to class representatives or segments of

19  the class."  Hudson, 2020 WL 2467060, at *9 (quoting Tableware,

20  484 F. Supp. at 1079.

21          Here, the Settlement Agreement does not improperly

22  discriminate between any segments of the class, as all class

23  members are entitled to the same injunctive relief.  See id.

24  While the Settlement Agreement allows plaintiff to seek an

25  incentive award of $3,500, other class members will still be

26  permitted to seek damages from defendant in their own, individual

27  cases.  (See Settlement Agreement, Ex. 2.)  As discussed above,

28  not only is the amount of the requested award presumptively

reasonable, see Roe v. Frito-Lay, Inc., No. 14CV-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) ("[A] $5,000 incentive award is 'presumptively reasonable' in the Ninth Circuit.") (collecting cases), plaintiff will have to submit additional evidence documenting her time and effort spent on this case and the likely value of other class members' individual claims for damages to ensure that her additional compensation above other class members is justified.  See Hudson, 2020 WL 2467060, at *9.  The court therefore finds that the Settlement Agreement treats class members equitably.  See Fed. R. Civ. P. 23(e)(D).

      C.   Rule 23(e) Notice Requirements

Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement.  Fed. R. Civ. P. 23(e)(1).  Because the Settlement Agreement as proposed would bind class members with respect to claims they have against defendant for injunctive relief and prevent them from participating in other class actions related to the calls in question, the court finds that notice to class members is necessary and appropriate.  (See id.)

While there are "no rigid rules to determine whether a settlement notice to class members satisfies constitutional and Rule 23(e) requirements," Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 114 (2d Cir. 2005), notice of settlement--like any form of notice--must comply with due process requirements under the Constitution.  See Rubenstein, 4 Newberg on Class Actions § 8:15 (5th ed.).  That is, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them

25

an opportunity to present their objections." <u>Mullane v. Cent.</u>
<u>Hanover Bank & Tr. Co.</u>, 339 U.S. 306, 314 (1950).  While actual
notice is not required, the notice provided must be "reasonably
certain to inform the absent members of the plaintiff class."
<u>Silber v. Mabon</u>, 18 F.3d 1449, 1454 (9th Cir. 1994) (citation
omitted).  The content of the "[n]otice is satisfactory if it
'generally describes the terms of the settlement in sufficient
detail to alert those with adverse viewpoints to investigate and
to come forward and be heard.'"  <u>See</u> <u>Churchill Vill., LLC v. Gen.</u>
<u>Elec.</u>, 361 F.3d 566, 575 (9th Cir. 2004).

Here, the parties originally agreed to publish summary
notice of the Settlement Agreement in two consecutive Monday
editions of USA Today, which would direct class members to a
settlement website that contains the full notice of settlement
and additional information for class members.  (<u>See</u> Settlement
Agreement ¶ 12(A))  The settlement administrator would also
establish a call center dedicated to providing class members with
information about the Settlement Agreement and to answering class
members' questions.  (<u>See</u> <u>id.</u>)  A toll-free number would be
established to allow class members to contact the call center
free of charge.  (<u>See</u> <u>id.</u>)

The full notice published on the settlement website
would provide, among other things, a description of the case; a
description of the injunctive relief provided by the Settlement
Agreement; the fact that class members will give up their right
to sue defendant for injunctive relief and to participate in
another class action; the fact that class members will retain the
right to file individual damages lawsuits against defendant; the

amount of the incentive award that plaintiff is seeking; the amount of attorney's fees that class counsel is seeking; the procedures for objecting to the settlement and for appearing at the fairness hearing; and the date and location of the fairness hearing.  (See Settlement Agreement at Exs. 3-4.)  Because the notice would inform class members of the relief provided by the settlement and of their inability sue defendant in the future for injunctive relief or participate in another class action related to the calls at issue, the court finds that it would adequately alert those "with adverse viewpoints to investigate and to come forward and be heard."  See Churchill, 361 F.3d at 575. Additionally, because this is a class action certified under Rule 23(b)(2) and only provides injunctive relief, it is not necessary for the notice to provide class members with an opportunity to opt out of the settlement.  See Equal Opportunity, 599 F.2d at 334 ("When an action is certified under Rule 23(b)(2) . . . absent class members are not required to receive notice or to have the opportunity to opt-out of the suit."); Dukes, 564 U.S. at 363 ((b)(2) does not require that class members be given . . . opt out rights, presumably because it is thought (rightly or wrongly) that notice has no purpose when the class is mandatory . . . .").

However, the full notice contained on the settlement website will not have any effect if members of the settlement class are not aware of its existence.  "When, as here, a class settlement is negotiated prior to formal class certification, there is an increased risk that the named plaintiffs and class counsel will breach the fiduciary obligations they owe to the

1    absent class members." Koby, 846 F.3d at 1079. "As a result,

2    'such agreements must withstand an even higher level of scrutiny

3    for evidence of collusion or other conflicts of interest than is

4    ordinarily required under Rule 23(e) before securing the court's

5    approval as fair.'" Id. (quoting In re Bluetooth Headset, 654

6    F.3d at 941). By the same token, when there are serious

7    questions raised about whether the proposed settlement agreement

8    would protect absent class members, the court must be even more

9    vigilant as to whether class members will actually receive notice

10   of the settlement. This is especially true where objecting to

11   the proposed settlement may be an absent class member's only

12   remedy because, as here, the proposed settlement agreement

13   preserves only the relatively unappealing option of bringing an

14   individual suit for a small amount of damages.

15           The court is not satisfied that simply publishing a

16   summary notice in two consecutive Monday editions of USA Today is

17   sufficient to notify class members of the existence of the

18   settlement or of the website where they can find additional

19   information. See Hecht v. United Collection Bureau, Inc., 691

20   F.3d 218, 224-25 (2d Cir. 2012) (holding notice published only in

21   USA Today to be insufficient); Mullane, 339 U.S. at 314. Because

22   the parties represent that defendant's records do not contain the

23   identifying information of potential class members (beyond their

24   phone numbers), as the class members were unintended recipients

25   of defendant's calls, the court is persuaded that requiring

26   individual notice via first-class mail would be impracticable and

27   unduly burdensome for defendant to locate sufficient identifying

28   information. See In re Agent Orange Prod. Liab. Litig., 818 F.2d

145, 168-69 (2d Cir. 1987), <u>cert. denied</u>, 484 U.S. 1004, 108 S.

Ct. (1988); <u>Shneider v. Chipotle Mexican Grill, Inc.</u>, No. 16-cv-

02200-HSG, 2019 WL 1512265 (N.D. Cal. Apr. 8, 2019) (holding

individual notice not appropriate where it cannot be proven that

list of potential class members to which notice would be sent

contains the entire universe of known class members).  However,

because defendant acknowledges that it has a list of "wrong

number" call designations in its records, the court finds that a

more targeted form of publication notice than that proposed in

the parties' original Settlement Agreement is possible and

warranted in this case.  <u>See</u> <u>Mullane</u>, 339 U.S. at 314.

        In their Joint Status Report, the parties discuss an

"alternative digital media notice plan" in which the settlement

administrator will utilize the Google Display Network to place

advertisements containing a summary notice of the Settlement

Agreement on the desktop and/or mobile devices of Google users

over a 30-day period.  These advertisements will be sent to users

corresponding with the phone numbers that defendant's records

associate with a "wrong number" call designation, as well as a

broader audience of users who provided their phone number to

Google when they signed up for an account.  (<u>See</u> Joint Status

Report at 6-7, Ex. A.)  The summary notice will contain a link to

the settlement website where potential class members will be able

to view the full notice of the Settlement Agreement.  (<u>Id.</u> at 7.)

The Settlement Administrator anticipates that this digital media

notice plan will result in approximately 41,267,000 "impressions"

for potential class members to view.  (<u>Id.</u>)  Other district

courts have found similar digital media notice plans to provide

1   adequate notice to class members under Rules 23(b)(3) and 23(e).

2   See Schneider, 2019 WL 1512265, at **4-5; In re EpiPen

3   (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust

4   Litig., No. 17-md-2785-DDC-TJJ, 2020 WL 6044085, at *2 (D. Kan.

5   Oct. 13, 2020) (approving notice plan that included individual

6   notice and digital media notice plan); In re Chinese-Manufactured

7   Drywall Prods. Liab. Litig., 424 F. Supp. 3d 456, 494-95 (E.D.

8   La. 2010) (approving notice plan that included notice in national

9   magazines as well as digital media notice plan).  Because the

10  court finds the parties' proposed digital media notice plan (see

11  Joint Status Report, Ex. A) to be significantly more effective

12  than their original proposal to publish notice in consecutive

13  editions of USA Today, and because there is no difference in cost

14  between the two plans, the court finds the parties' proposed

15  digital media notice plan to be "reasonably calculated under all

16  the circumstances" to apprise interested parties of the

17  Settlement Agreement.  See Mullane, 339 U.S. at 314.

18          As the court has emphasized, the findings contained in

19  this Memorandum and Order related to the fairness, adequacy, and

20  reasonableness of the Settlement Agreement are only preliminary.

21  Though the court has not found that any of the Agreement's

22  provisions represent "glaring deficiencies" sufficient to place

23  the settlement outside the range of possible approval at this

24  point, see Syed, 2019 WL 1130469, at *7 (citations omitted);

25  Tableware, 484 F. Supp. 2d at 1079, full evaluation of the

26  fairness and adequacy of the settlement will not occur until the

27  time of the final fairness hearing.  See Fed. R. Civ. P.

28  23(e)(2).  There, input from absent class members will be a

1    valuable factor for the court to consider when evaluating the

2    fairness of the settlement's terms, see Staton, 327 F.3d at 977-

3    78, and the overall presence or absence of objections in

4    comparison to class size may provide the court with evidence of

5    the class' overall reaction to the settlement.  See Hanlon, 150

6    F.3d at 1027, overruled on other grounds by Dukes, 564 U.S. at 363

7    ("[T]he fact that the overwhelming majority of the class

8    willingly approved the offer and stayed in the class presents at

9    least some objective positive commentary as to its fairness.");

10   Rodriguez, 563 F.3d at 967 (approving district court's finding of

11   "favorable reaction" to settlement where, 52,000 class members

12   submitted claims and 54 objected).

13        IT IS THEREFORE ORDERED that plaintiff's motion for

14   preliminary certification of a conditional settlement class and

15   preliminary approval of the class action settlement (Docket No.

16   38) be, and the same hereby is, GRANTED.

17        IT IS FURTHER ORDERED THAT:

18   (1) the following class be provisionally certified for the

19   purpose of settlement: All natural and juridical persons within

20   the United States (a) to whom defendant placed, or caused to be

21   placed, a call, (b) directed to a number assigned to a cellular

22   telephone service, but not assigned to the intended recipient of

23   defendant's calls, (c) by using an automatic telephone dialing

24   system or an artificial or prerecorded voice, (d) from September

25   18, 2015 through the date of this Order;

26   (2) the proposed settlement is preliminarily approved as

27   fair, just, reasonable, and adequate to the members of the

28   settlement class, subject to further consideration at the final

fairness hearing after distribution of notice to members of the settlement class;

(3) for purposes of carrying out the terms of the settlement only:

(a) Naomi Legere-Gordon is appointed as the representative of the settlement class and is provisionally found to be an adequate representative within the meaning of Federal Rule of Civil Procedure 23;

(b) Gary M. Klinger of Mason Lietz & Klinger, LLP, and Anthony Paronich of Paronich Law, P.C., are provisionally found to be fair and adequate representatives of the settlement class and are appointed as class counsel for the purposes of representing the settlement class conditionally certified in this Order;

(4) KCC Class Action Services, LLC ("KCC") is appointed as the settlement administrator;

(5) the form and content of the proposed full Notice of Class Action Settlement contained in the parties Settlement Agreement (Settlement Agreement at Ex. 4) is approved, except to the extent that it must be updated to reflect dates and deadlines specified in this Order and to reflect the fact that the final fairness hearing will occur over Zoom;

(6) the content of the proposed digital media notice plan contained in the parties' Joint Status Report (Joint Status Report, Ex. A) is approved, except to the extent it must be updated to reflect dates and deadlines specified in this Order. The summary notice placed on the desktop and/or mobile devices of users shall, at a minimum, state "If you received a call on your

cell phone from FirstCredit Incorporated, a class action settlement may affect your rights," and shall contain a link to the settlement website containing the full notice created pursuant to the Notice of Class Action Settlement contained in the parties' Settlement Agreement (Settlement Agreement at Exs. 3-4).

(7) no later than twenty (20) days from the date this Order is signed, KCC shall provide notice to the class members pursuant to the proposed digital media notice plan (Joint Status Report, Ex. A).

(8) no later than sixty (60) days from the date this Order is signed, any member of the settlement class who intends to object to or comment upon the settlement shall mail written notice of that intent to class counsel, defense counsel, and the United States District Court for the District of Idaho, pursuant to the instructions in the Notice of Class Action Settlement. This notice must be personally signed and include the following information: (1) the class member's full name and current address, (2) the cellular telephone number(s) at which the class member believes he or she received the call(s) at issue, (3) a statement that the class member believes him or herself to be a member of the settlement class, (4) the specific grounds for the objection, (5) all documents or writings that the class member wants the court to consider in relation to his or her objection, (6) the name and contact information for any and all attorneys representing or in any way assisting the class member, or who may profit from pursuing the objection, and (7) a statement indicating whether the class member intends to appear at the

1  final fairness hearing (either personally or through his or her

2  attorney);

3     (9) a final fairness hearing shall be held before this court

4  on Tuesday, June 1, 2021, at 1:30 p.m. (PT) in Courtroom 5 to

5  determine whether the proposed settlement is fair, reasonable,

6  and adequate and should be approved by this court; to determine

7  whether the settlement class's claims should be dismissed with

8  prejudice and judgment entered upon final approval of the

9  settlement; to determine whether final class certification is

10  appropriate; and to consider class counsel's applications for

11  attorney's fees, costs, and an incentive award to plaintiff.  The

12  parties shall update the proposed full Notice of Class Action

13  Settlement to inform class members that the final fairness

14  hearing will take place over Zoom.  The Notice shall instruct any

15  person who is interested in attending the hearing to contact

16  plaintiff's counsel no later than sixty (60) days from the date

17  KCC publishes the Notice of Class Action Settlement to obtain

18  instructions for gaining access via Zoom.  The courtroom deputy

19  shall provide plaintiff's counsel with these instructions no

20  later than May 25, 2021.  Plaintiff's counsel shall, in turn,

21  provide the instructions to persons who have expressed interest

22  in attending no later than May 27, 2021.  The court may continue

23  the final fairness hearing without further notice to the members

24  of the class;

25     (10) no later than twenty-eight (28) days before the final

26  fairness hearing, class counsel shall file with this court a

27  petition for an award of attorney's fees and costs.  Any

28  objections or responses to the petition shall be filed no later

than fourteen (14) days before the final fairness hearing.  Class counsel may file a reply to any objections no later than seven (7) days before the final fairness hearing;

(11) no later than twenty-eight (28) days before the final fairness hearing, class counsel shall file and serve upon the court and defendants' counsel all papers in support of the settlement, the incentive award for the class representative, and any award for attorney's fees and costs;

(12) no later than twenty-eight (28) days before the final fairness hearing, KCC shall prepare, and class counsel shall file and serve upon the court and defendants' counsel, a declaration setting forth the services rendered, proof of notice provided, a list of all class members, and a list of all class members who have commented upon or objected to the settlement;

(13) any person who has standing to object to the terms of the proposed settlement may appear at the final fairness hearing in person or by counsel and be heard to the extent allowed by the court in support of, or in opposition to, (a) the fairness, reasonableness, and adequacy of the proposed settlement, (b) the requested award of attorney's fees, reimbursement of costs, and incentive award to the class representative, and/or (c) the propriety of class certification.  To be heard in opposition at the final fairness hearing, a person must, no later than sixty (60) days from the date KCC publishes the Notice of Class Action Settlement, (a) serve by hand or through the mails written notice of his or her intention to appear, stating the name and case number of this action and each objection and the basis therefore, together with copies of any papers and briefs, upon class counsel

and counsel for defendants, and (b) file said appearance,
objections, papers, and briefs with the court, together with
proof of service of all such documents upon counsel for the
parties.

        Responses to any such objections shall be served by
hand or through the mails on the objectors, or on the objector's
counsel if there is any, and filed with the court no later than
fourteen (14) calendar days before the final fairness hearing.
Objectors may file optional replies no later than seven (7)
calendar days before the final fairness hearing in the same
manner described above.  Any settlement class member who does not
make his or her objection in the manner provided herein shall be
deemed to have waived such objection and shall forever be
foreclosed from objecting to the fairness or adequacy of the
proposed settlement, the judgment entered, and the award of
attorney's fees, costs, and an incentive award to the class
representative unless otherwise ordered by the court;

    (14) pending final determination of whether the settlement
should be ultimately approved, the court preliminarily enjoins
all class members (unless and until the class member has
submitted a timely and valid request for exclusion) from filing
or prosecuting any claims, suits, or administrative proceedings
regarding claims to be released by the settlement.


Dated:  January 26, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

36