Gary M. Klinger (*pro hac vice*)
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (202) 429-2290
Facsimile: (202) 429-2294
Email: gklinger@masonllp.com

Eric B. Swartz (ISB# 6396)
**JONES & SWARTZ PLLC**
623 West Hays Street
Boise, ID 83702
Telephone: (208) 489-8989
Facsimile: (208) 489-8988
Email: eric@jonesandswartzlaw.com

Anthony I. Paronich (*pro hac vice*)
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510
Email: anthony@paronichlaw.com

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NAOMI LEGERE-GORDON, individually and on behalf all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>FIRSTCREDIT INCORPORATED,<br><br>        Defendant. | **Case No.:** 1-19-cv-360-WBS |

## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND PLAINTIFF'S SERVICE AWARD, AND MEMORANDUM IN SUPPORT

## TABLE OF CONTENTS

**SECTION**:                                                                                                **PAGE**:

I.      INTRODUCTION.................................................................................................. 1

II.     SUMMARY OF CASE AND SETTLEMENT.................................................... 2

    a.   Plaintiff Alleges FCI Violated The TCPA By Placing Autodialed Calls
        Without Her Consent. FCI Denies All Wrongdoing.................................... 2

    b.   Despite Facing Significant Obstacles To Proving Liability And
        Obtaining And Maintaining Class Certification, Plaintiff's Efforts
        Resulted In Significant Injunctive Relief Provided To The Class............................ 2

    c.   The Settlement Requires FCI To Provide Significant Injunctive Relief
        For The Class Over The Course Of 24-Months. .......................................... 3

    d.   The Settlement Also Provides For Attorneys' Fees, Costs, And A Service
        Award To Be Paid By FCI Upon Court Approval. ...................................... 5

    e.   Notice Was Successfully Completed By KCC Pursuant To The Court's
        Preliminary Approval Order, And Zero Objections Have Been Received. ............. 5

IV.     ARGUMENT ...................................................................................................... 6

    a.   This Court Should Grant Final Approval Of The Settlement.................................. 6

        1.   *The Settlement Agreement provides the Class with adequate relief,*
            *especially in light of the limited release negotiated for Class Members.*............. 7

            i.    *The likely costs, risks, and delay of trial and appeal are great.* ...................... 8

            ii.   *Distribution of relief is effective in that all Class Members as well as*
               *the general public will benefit from the injunctive relief and measures*
               *provided for by the Settlement.* .................................................................... 10

            iii.  *The terms pertaining to the award for attorneys' fees are fair and*
               *reasonable.* ................................................................................................... 11

            iv.   *There are no additional agreements that need to be considered by*
               *the Court under Rule 23(e)(3).*.................................................................... 11

        2.   *The Settlement was negotiated at arms' length.* .................................................. 11

*3.* ***Class Representatives and Class Counsel have adequately represented the Class.*** ............................................................................ 12

*4.* ***The Settlement treats Class Members equitably relative to each other.*** ............ 13

*5.* ***Other factors considered by Ninth Circuit Courts weigh in favor of Final Approval.*** ...................................................................... 14

**b.** **Plaintiffs' Requested Attorneys' Fees And Costs Are Reasonable And Should Be Approved.** .................................................................. 15

*1.* ***Class Counsel expended significant time and labor litigating this case prior to Settlement.*** ................................................................ 16

*2.* ***The fees sought by Class Counsel are well within the range of those regularly accepted in similar cases.*** .......................................... 18

*3.* ***The results achieved were exceptional considering the risks of litigation and the financial status of Defendant.*** ................................. 19

*4.* ***Class Counsel took on this case on a contingent basis, and risked incurring significant costs with no remuneration.*** ......................... 19

*5.* ***Class Counsel should be granted their requested costs, which are reasonable and necessary litigation expenses.*** ............................ 20

**c.** **The Service Award Requested By Plaintiff Should Also Be Approved.** .................. 20

**VI.** **CONCLUSION** ......................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

<u>CASES:</u>                                                                                              <u>PAGE(S):</u>

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). ............................................................. 12

*Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508 (E.D. Wis. 2014) ........................................... 9

*Bennett v. Behring Corp.*, 96 F.R.D. 343 (S.D. Fla. 1982) ............................................................ 10

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014) .............................. 9

*Bonoan v. Adobe, Inc.*, No. 3:19-cv-01068-RS (N.D. Cal. Dec. 2, 2020) ................................... 22

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. May, 27, 2015)........................ 18, 20

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ............................................................. 11

*Dennis v. Amerigroup Wash., Inc.*, No. 3:19-cv-05165-JLR (W.D. Wash. Mar.
   23, 2021).................................................................................................................................. 22

*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021). ........................................................... 1, 9, 20

*Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939 (N.D. Cal. 2013)................................................ 12

*Grant v. Cap. Mgmt. Servs., L.P.*, No. 10-cv-2471-WQH (BGS), 2014 WL 888665
   (S.D. Cal. Mar. 5, 2014) ........................................................................................................... 8

*Gutierrez-Rodriguez v. R.M. Galicia, Inc.*, No. 16-CV-0182 H BLM, 2017 WL
   4621188 (S.D. Cal. Oct. 16, 2017) .......................................................................................... 8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), *overruled on other grounds
   by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ....................................................... 15

*Hudson v. Libre Tech. Inc.*, No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 (S.D.
   Cal. May 13, 2020) (slip copy).................................................................................................. 13

*In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002) .............................................. 10

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. Jan. 23, 1996).................... 20

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) .............................................. 10

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007).................................... 13

*In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ......................... 19

*Jamison v. First Credit Servs.*, 290 F.R.D. 92 (N.D. Ill. 2013) ...................................................... 9

*Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071 (9th Cir. 2017). ................................................ 15

*Milliron v. T-Mobile USA, Inc.*, No. 08-4149 (JLL), 2009 WL 3345762 (D.N.J. Sept. 14, 2009) ........................................................................................................ 12

*Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012) .............................................................. 7

*Morey v. Louis Vuitton N. Am., Inc.*, No. 11cv1517, 2014 WL 109194 (S.D. Cal. Jan. 9, 2014) .............................................................................................................. 22

*Osegueda v. N. Cal. InAlliance*, No. 18-cv-00835 WBS EFB, 2020 WL 4194051 (E.D. Cal. July 20, 2020) (slip copy) ......................................................................... 21

*Rodriguez v. W. Publ'g Corp.*, 563, F.3d 948 (9th Cir. 2009). ................................................. 20

*Roe v. Frito-Lay, Inc.*, No. 14-cv-00751, 2017 WL 1315626 (N.D. Cal. Apr. 7, 2017) ............. 14

*Rose v. Bank of Am. Corp.*, No. 5:11-cv-02390, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ...................................................................................................... 17, 18, 19

*Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs, LLC*, No. 12 C 3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) ................................................................................ 9

*Salazar v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015) ................................................ 17

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. EDCV 08-482-VAP (OPx), 2010 WL 2486346 (C.D. Cal. June 15, 2010) ....................................................................... 12

*Schwyhart v. AmSher Collection Servs., Inc.*, No. 2:15-cv-01175-JEO, 2017 WL 1034201 (N.D. Ala. Mar. 16, 2017) ......................................................................... 8

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003). ................................................................... 7

*Thomas v. Fin. Corp. of Am., Inc.*, No. 3:19-cv-00152-E (N.D. Tex. July 13, 2020), ECF No. 91. ............................................................................................................ 7, 8

*Thomas v. Fin. Corp. of Am., Inc.*, No. 3:19-cv-00152-E (N.D. Tex. May 4, 2021), ECF No. 86. ................................................................................................................. 8

*Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) ............. 9

*Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA (EMC), 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ....................................................................... 22

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ........................................... 16, 18, 19

*Williams v. Costco Wholesale Corp.*, No. 02 cv2003 IEG (AJB), 2012 WL 2721452
  (S.D. Cal. July 7, 2010) ........................................................................................................ 22

*Wilson v. Everbank*, No. 14-CIV-22264-BLOOM/VALLE, 2016 WL 457011 (S.D.
  Fla. Feb. 3, 2016) ................................................................................................................. 12

**STATUTES:**                                                                          **PAGE(S):**

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A) ....................... passim

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(3)(B) ....................... passim

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(3)(C) ....................... passim

**RULES:**                                                                             **PAGE(S):**

Fed. R. Civ. P. 23 ............................................................................................................... 8, 14

Fed. R. Civ. P. 23(a) ............................................................................................................... 8

Fed. R. Civ. P. 23(e)(2) ..................................................................................................... 6, 10

Fed. R. Civ. P. 23(e)(3) ..................................................................................................... 6, 11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

After approximately a year of vigorously contested litigation, and as a result of extensive arm's-length negotiations following mediation before the Hon. James Ware (Ret.), Plaintiff Naomi Legere-Gordon ("Plaintiff") and Defendant FirstCredit Incorporated ("FCI" or "Defendant") reached an agreement to resolve this class action brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A). The Settlement provides broad injunctive relief for all persons who received autodialed or pre-recorded calls from FCI on their cellular telephones and requires FCI to institute a number of meaningful changes to its business practices to help prevent future autodialed calls to cellular telephones without consent—including scrubbing all cellular telephone numbers from its call lists, unless Defendant has a good faith basis to believe consent to call the number has been given. Importantly, Members of the Settlement Class will not release their individual claims against FCI.[1] This is an outstanding result in view of the Supreme Court's recent ruling in *Facebook, Inc. v. Duguid*, which would, in all likelihood, zero out the claims of the entire class if this case were to proceed. 141 S. Ct. 1163 (2021).

On January 26, 2021, this Court preliminarily approved the Settlement and authorized distribution of notice to potential Settlement Class Members. ECF No. 43. In turn, KCC Class Action Services, LLC ("KCC")—the Court-appointed class administrator—carried out class Notice in accordance with this Court's Preliminary Approval Order, and Settlement Class Members were provided until March 27, 2021 to object to the Settlement. As of May 4, 2021, not a single Class Member has objected to the Settlement.[2] In other words, there is no opposition to

---

[1] Plaintiff Naomi Legere-Gordon previously filed the Settlement Agreement ("Agreement" or "Agr.") with the Court. ECF No. 38-1.

[2] KCC has provided a Notice Declaration for the Court's review, filed herewith at <u>Exhibit 1</u>.

the Settlement. For these reasons, discussed more fully herein, the Settlement should be finally approved.

## II.   SUMMARY OF CASE AND SETTLEMENT

### a.   Plaintiff Alleges FCI Violated The TCPA By Placing Autodialed Calls Without Her Consent. FCI Denies All Wrongdoing.

Plaintiff filed her Complaint on September 18, 2019 in the District of Idaho alleging violations of the TCPA on behalf of herself and all similarly situated individuals. *See* Compl., ECF No. 1. Specifically, Plaintiff alleges that FCI made calls to her cell phone through an automatic telephone dialing system ("ATDS"), without her consent. *Id.* at ¶¶ 25–42. In bringing her claims, Plaintiff sought $500 per violation and injunctive relief under 47 U.S.C. § 227(b)(3)(B) and $1,500 per violation and injunctive relief under 47 U.S.C. § 227(b)(3)(B) and § 227(b)(3)(C). At issue is whether these calls, and those made to similarly situated persons, violate the TCPA. FCI maintains that it did not violate the TCPA.

### b.   Despite Facing Significant Obstacles To Proving Liability And Obtaining And Maintaining Class Certification, Plaintiff's Efforts Resulted In Significant Injunctive Relief Provided To The Class.

While Plaintiff strongly believes in the merits of her claims, FCI vehemently disputes that it violated the TCPA, and has raised a host of defenses both on the merits and as to class certification.

Despite these substantial obstacles—and only after the initial discovery period had nearly closed—the Parties mediated the case with Hon. James Ware (Ret.) on September 15, 2020. Agr. § II. After a full day of negotiations and weeks of drafting and finalizing the Settlement Agreement, the Parties were able to present the Settlement to the Court on October 19, 2020 with Plaintiff's Motion for Preliminary Approval. *See* Pl.'s Mot. for Prelim. Approval, ECF No. 38.

**c.      The Settlement Requires FCI To Provide Significant Injunctive Relief For The Class Over The Course Of 24-Months.**

The Settlement requires substantial injunctive relief aimed at preventing future unwanted calls to the cellular telephones of consumers nationwide. To this end, the Settlement calls for the certification of the following Class defined as:

> All natural and juridical persons within the United States (1) to whom FCI placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to the intended recipient of Defendant's calls, (3) by using an automatic telephone dialing system or an artificial or prerecorded voice, (4) from September 18, 2015 through the date the Order of Preliminary Approval of Class Action Settlement is entered by the Court.

Agr. ¶ 1.A. Records shared and analyzed by the expert suggest Plaintiff would allege more than 33,000 calls, made in violation of the TCPA, are at issue. *See* Decl. of Anthony Paronich in Supp. of Pl.'s Mot. for Prelim. Approval ¶ 10, ECF No. 38-2 ("Paronich MPA Decl.").

The Settlement also requires FCI to implement a series of specific changes to its calling practices, including:

- Updating and improving its processes and procedures concerning compliance with the TCPA. Such policies and procedures shall include implementation of a scrub of phone numbers placed by clients or otherwise obtained to determine whether the number is a cell phone. If a scrub determines a phone number is a cell phone, FCI will not put it on its dialing equipment unless it has a good faith basis to believe there is consent to call the number or the law otherwise permits such calls.

- Revising its written TCPA processes, procedures, and training materials.

- Implementing regular training for its employees concerning its TCPA processes and procedures.

3

- Complying with the Stipulated Injunction, which will last for 24 months after it is entered by the Court.

- Issuing quarterly reports to Class Counsel concerning TCPA litigation during the 2-year Injunctive Period.

- Submitting proof of compliance with the Injunction to Class Counsel by way of providing the training and testing materials used in the training upon the commencement of such training. Furthermore, a declaration of the responsible person at FCI for ensuring compliance with the training requirements of the Injunction will be provided upon completion of the training. Additionally, FCI will be required to issue quarterly reports to Class Counsel concerning TCPA litigation during the 2-year Injunctive Period.

- At the end of the 24-month Stipulated Injunction, FCI shall submit to Class Counsel a declaration from its training coordinator confirming that training was provided on a regular basis during the 24-month Injunction Period. FCI shall also submit to Class Counsel an exemplar of the revised TCPA testing materials to confirm FCI's compliance.

*See* Agr., Ex. 5.

In exchange for this injunctive relief, Class Members will waive only their opportunity to bring a class action under the TCPA against FCI arising out of calls made before this Court preliminarily approves the Settlement. *Id*. at ¶ 19. Critically, Class Members will *not* release any individual claims they may have against FCI, which they will be free to pursue in separate litigation. *Id*.

**d.      The Settlement Also Provides For Attorneys' Fees, Costs, And A Service Award To Be Paid By FCI Upon Court Approval.**

As compensation for the relief achieved on behalf of the Class, Class Counsel seeks approval from this Court for an award $180,000 in combined attorneys' fees and litigation costs. Agr. ¶ 30. As part of the Settlement Agreement, Plaintiff also seeks a service award in the amount of $3,500 in recognition of her service as a Class Representative. *Id.* at ¶ 29. FCI has agreed not to oppose Plaintiff's request. *Id.*

**e.      Notice Was Successfully Completed By KCC Pursuant To The Court's Preliminary Approval Order, And Zero Objections Have Been Received.**

KCC successfully completed the proposed digital Notice Plan in accordance with this Court's Preliminary Approval Order. *See* Decl. of Jay Geraci Re: Notice Procs. ("Geraci Decl."), filed herewith at <u>Exhibit 1</u>.

KCC purchased 41,267,000 impressions to be distributed via various websites. Geraci Decl. ¶ 2. The impressions appeared on both mobile and desktop devices from February 15, 2021 through March 17, 2021. *Id.* A total of 41,499,034 impressions were delivered, resulting in an additional 232,034 impressions at no extra charge. *Id.* Digital Notices complied with the Preliminary Approval Order, and provided Settlement Class Members with pertinent information regarding the Settlement. *See* Geraci Decl., Ex. A.

In addition to the impressions, KCC established and maintained <u>http://www.LegereTCPASettlement.com</u> dedicated to this matter to provide information to the Class Members and to answer frequently asked questions. Geraci Decl. ¶ 3. The website URL was set forth in the Class Notice. *Id.* Visitors of the website can download copies of the Class Notice and other case-related documents. *Id.* The Class Notice, made available on the website or via request, is in substantially

the same form as that approved by the Court. *See id.,* Ex. B. As of the date of this declaration, the website has received 9,855 visits. *Id.*

KCC also established and continues to maintain a toll-free telephone number for potential Class Members to call and obtain information about the Settlement or to request a Notice Packet be mailed to them. *Id.* at ¶ 4. The telephone hotline became operational on February 10, 2021, and is accessible 24 hours a day, 7 days a week. *Id.* As of date of this filing, KCC has received a total of 6 calls to the telephone hotline for a total of 26.1 minutes. *Id.* One Notice Packet was requested and mailed out. *Id.*

As of the date of this filing, KCC has received <u>*no objections*</u> to the Settlement. *Id.* at ¶ 5.

## IV.   ARGUMENT

### a.   This Court Should Grant Final Approval Of The Settlement.

Under Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)–(D). In determining whether the relief provided is adequate, Courts must consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

The Ninth Circuit has also identified additional factors for consideration on final approval including: The strength of the plaintiff's case; the risk, expense, complexity, and likely duration of

further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

As analysis of these factors weigh heavily in support of Final Approval, this Court should grant Plaintiff's Motion.

> ### 1.   *The Settlement Agreement provides the Class with adequate relief, especially in light of the limited release negotiated for Class Members.*

The Settlement Agreement provides the Class with significant relief in that it requires FCI to scrub its call list of all cellular telephone numbers for whom FCI does not have a good faith belief that consent to call has been provided, to stop violating the TCPA, and to implement specific delineated changes to its policies and procedures and training geared toward ensuring TCPA compliance. *See generally*, Agr. ¶¶ 21–25. Such relief is provided *without* requiring Class Members to release their rights to bring individual claims against FCI. Agr. ¶¶ 21–25. The relief obtained for the Settlement Class comports with the purpose of the TCPA—to protect consumers from unwanted and harassing calls. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). Moreover, the relief is consistent with the injunctive relief approved earlier this year in *Thomas v. Fin. Corp. of Am., Inc.*, No. 3:19-cv-00152-E (N.D. Tex. July 13, 2020), a TCPA case involving similar facts. *Id.* at ECF No. 91. There, the district court approved a Rule 23(b)(2) settlement that required the defendant to abide by injunctive terms that are substantively identical to those here. *Id.* Specifically, the defendant was required to:

> (a) update and improve its processes and procedures concerning compliance with the TCPA, including the implementation of a scrub of phone numbers placed by clients or otherwise obtained to determine whether the number is

> a cell phone; (b) revise its written TCPA processes, procedures, and training
> materials; (c) implement regular training for its employees concerning its
> TCPA processes and procedures; and (d) for a period of time of two years,
> with quarterly reports to class counsel and proof of compliance.

*Id.*

The balance Plaintiff struck, of obtaining significant injunctive relief in consideration for a limited release which preserves the Class Members' individual claims against FCI, is consistent a number of TCPA injunctive relief settlements in the debt collection space. *See, e.g., Thomas v. Fin. Corp. of Am., Inc.*, No. 3:19-cv-00152-E at ECF No. 86 (N.D. Tex. May 4, 2021) (finally approving near identical TCPA injunctive relief settlement against debt collector); *Schwyhart v. AmSher Collection Servs., Inc.*, No. 2:15-cv-01175-JEO, 2017 WL 1034201, at *1 (N.D. Ala. Mar. 16, 2017) ("The Court finds that the Injunctive Class, as defined above, and for purposes of settlement, satisfies all of the requirements of Rule 23(a)"); *Grant v. Cap. Mgmt. Servs., L.P.*, No. 10-cv-2471-WQH (BGS), 2014 WL 888665 (S.D. Cal. Mar. 5, 2014) (TCPA case granting final approval of settlement agreement under which class members received injunctive relief, but class members were not estopped from pursuing their individual claims); *Gutierrez-Rodriguez v. R.M. Galicia, Inc.*, No. 16-CV-0182 H BLM, 2017 WL 4621188, at *6 (S.D. Cal. Oct. 16, 2017) (approving TCPA class action settlement with similar injunctive relief). As such, and because the Settlement meets standards set out by Rule 23 below, this Court should grant Final Approval.

     *i.     The likely costs, risks, and delay of trial and appeal are great.*

As discussed in Plaintiff's Motion for Preliminary Approval, this case presents significant risk. For example, a primary risk in this case relates to the fact that Defendant has represented that, due to external factors, its records are unreliable for purposes of identifying potential Class

Members. Another risk in this case focused on the question of whether the dialing system, which Plaintiff contends is a predictive dialer, is an "Automatic Telephone Dialing System" under the TCPA—a definition recently definitively narrowed by the Supreme Court this past April. *See Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021).[3] If the case were to proceed, the claims of Plaintiff and the Class would, in all likelihood, be zeroed out by the *Facebook* ruling.

Further, class certification is also far from automatic in TCPA cases. *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *8 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation), *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action), *and Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), *with Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs, LLC*, No. 12 C 3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) *and Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same). Even if the Class were certified, the Plaintiff would still have a substantial obstacle regarding FCI's liability.

While Ms. Legere-Gordon disputes FCI's defenses, and believes the authorities relied upon by FCI apply to a set of facts unique to those particular cases, her likelihood of obtaining a successful result at trial is far from certain.

This is especially true in light of FCI's limited funds. The records shared and analyzed by the expert for the Plaintiff demonstrate that the Plaintiff would allege more than 33,000 potentially violative calls at issue. Paronich MPA Decl. ¶ 9. Under the TCPA's statutory damages provision,

---

[3] On April 1, 2021, the Supreme Court ruled that to qualify as an ATDS, a device must have the capacity to either store a number using a random or sequential number generator, narrowing the definition of ATDS. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021).

a *minimum* of $500 would be assessed for those calls, which would result in a $16,500,000 judgment. *Id.* This is far in excess of the ability of FCI to pay, as confirmed by the financial documents shared by FCI in support of Settlement. *Id.* Indeed, a significant portion of the Settlement is being funded by FCI's insurance company, who is not without coverage defenses to the action. *Id.* at ¶ 10. Thus, in light of FCI's financial condition and of the Rule 23(e)(2) factors examined below, the Settlement provides for adequate relief.

Accordingly, and especially in light of FCI's financial standing, Plaintiff's decision to settle her claims and the claims of the Members of the Class for a limited release is reasonable. *See Bennett v. Behring Corp.*, 96 F.R.D. 343, 349–50 (S.D. Fla. 1982) (noting that the plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for the plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"); *see also In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 508 (W.D. Pa. 2003) ("Under these circumstances, even if the Class were to proceed to trial successfully against Rent–Way, it is highly doubtful that the Class would be able to secure a better recovery than that provided by the proposed Settlement. This factor therefore strongly favors approval of the proposed Settlement."); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 125 (D.N.J. 2002) ("The Defendants' inability to withstand greater judgment militates in favor of settlement."). Thus, this factor weighs in favor of Final Approval.

> ii.     *Distribution of relief is effective in that all Class Members as well as the general public will benefit from the injunctive relief and measures provided for by the Settlement.*

The Settlement agreement provides Members of the Settlement Classes an injunction against further violations of the TCPA. As noted by this Court in its Order Granting Preliminary Approval, the terms of the injunctive relief here will require FCI to scrub its call list of all cellular

numbers for whom FCI does not have a good faith belief that consent to call has been provided, including those numbers already called. ECF No. 43; Agr., Ex. 5. This is real value that would not have been available to Class Members absent the Settlement. *Id.* Moreover, in addition to other requirements, during the two-year period in which the injunction is in effect, Defendant will implement policies and procedures and training geared toward ensuring TCPA compliance. Agr. ¶ VII.C. These measures will be implemented by FCI over the course of two years and reviewed by Class Counsel quarterly and at the close of the 24-month period. Agr. ¶ VII.D-E, Ex. 5. Thus, this factor weighs in favor of Settlement approval.

> iii.   *The terms pertaining to the award for attorneys' fees are fair and reasonable.*

Plaintiff here seeks attorneys' fees in the amount of $180,000. As discussed at length at Section IV.b, *infra*, these fees are reasonable in light of Class Counsel's lodestar and the result obtained.

> iv.   *There are no additional agreements that need to be considered by the Court under Rule 23(e)(3).*

The Settlement Agreement and attachments, including the stipulated injunction, are the only agreements impacting the Settlement at issue. As such, this favor weighs in favor of approval.

### 2.   *The Settlement was negotiated at arms' length.*

Here, the proposed Settlement followed a near completion of the discovery period, and was only tentatively reached after a full-day mediation session with Hon. James Ware (Ret.) of JAMS on September 15, 2020. Indeed, Judge Ware—through an all-day, virtual in-person mediation session that the Parties attended—was instrumental in resolving this case. Accordingly, there can be no doubt that the Parties negotiated their Settlement at arms' length and in good faith. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] . . . helps to ensure

that the proceedings were free of collusion and undue pressure."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. EDCV 08-482-VAP (OPx), 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149 (JLL), 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *Wilson v. Everbank*, No. 14-CIV-22264-BLOOM/VALLE, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (finding no evidence of fraud or collusion where the settlement was negotiated at arms' length, and where the mediation was overseen by a nationally renowned mediator). Thus, this Settlement, reached after informed negotiations, "is entitled to deference as the private consensual decision of the parties" and should be approved. *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 942 (N.D. Cal. 2013).

### 3. Class Representatives and Class Counsel have adequately represented the Class.

In determining the adequacy of class counsel and class representatives, courts consider two factors: (1) whether the named plaintiff and class counsel have any conflicts of interest with the class they seek to represent; and (2) whether the named plaintiff and class counsel has/will vigorously prosecute the action on behalf of the class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 n.20 (1997). After extensive discovery and with the assistance of Judge Ware (Ret.), the efforts of Class Representatives and Class Counsel here have resulted in a Settlement Agreement that provides injunctive relief from further calls violative of the TCPA in exchange for a limited release from Class Members *that allows them to pursue their individual claims against FCI should they decide to do so.*

While the Settlement speaks for itself, it is important to note that Plaintiff has no interests antagonistic to those of the Class: she is a part of the same Class, suffered the same injury, has the same interest in stopping calls placed in violation of the TCPA at the expense of her rights, and as discussed at length in Section IV.c, *infra*, seeks only a modest service compared with those sought by Plaintiffs in other TCPA class actions, and not significantly more valuable than the damages any Class Member can pursue for themself, on an individual basis, against FCI.

Moreover, Class Counsel are experienced litigators, have years of experience in dozens of TCPA and other class actions involving privacy rights, and have zealously advocated both for Plaintiff and for the Class as a whole. *See* Klinger MPA Decl. ¶¶ 8–15; Paronich MPA Decl. ¶ 7.

Accordingly, this Court should find Plaintiff and Class Counsel adequate representatives for the Class and weigh this factor in favor of Final Approval.

### 4.    *The Settlement treats Class Members equitably relative to each other.*

In determining whether this factor weights in favor of final approval, a court must determine whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Tech. Inc.*, No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, at \*9 (S.D. Cal. May 13, 2020) (slip copy) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). Here, as noted in this Court's Order Granting Preliminary Approval, the Settlement "does not improperly discriminate between any segments of the class, as all class members are entitled to the same injunctive relief. *See* Prelim. Approval Order at 49, ECF No. 43 ("PA Order"). While Plaintiff has been permitted to seek approval of a service award from this Court, as explained in detail at Section IV.c, *infra*, that award is presumptively reasonable, and does not call into question Plaintiff's adequacy or the validity of

the Settlement. *See Roe v. Frito-Lay, Inc.*, No. 14-cv-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017). As such, this factor too, weighs in favor of Final Approval.

     **5.**    ***Other factors considered by Ninth Circuit Courts weigh in favor of Final Approval.***

The factors considered by Ninth Circuit Courts prior to the amendment of Rule 23, and still considered by those Courts today, also weigh in favor of Final Approval.

*First*, as discussed at length above, Plaintiff believes she has strong claims and would be able to prevail. However, her success is not guaranteed.

*Second*, protracted litigation is likely to be expensive, complex, and risky for Plaintiff and Class Members. As described in Section IV(a)(1)(i), *infra*, hurdles that would need to be overcome include:

- Defendant's lack of reliable records;

- The question of whether the dialing system, which Plaintiff contends is a predictive dialer, is an "Automatic Telephone Dialing System" under the TCPA; and

- The certification and maintenance of Plaintiff's Class through trial.

*Third*, if she were to proceed to litigate her claims through trial, Plaintiff would encounter risks in proving FCI's liability. Perhaps most importantly, even if she were successful, FCI could not support a judgment accounting for all Class Members' damages—even without the costs of additional litigation.

*Fourth,* while the Settlement only offers injunctive relief, that relief will benefit all Members of the Class. The Settlement requires FCI to scrub its call list of all cellular telephone numbers for whom FCI does not have a good faith belief that consent to call has been provided, including those numbers already called, and to implement specific delineated changes to its

14

policies and procedures and training geared toward ensuring TCPA compliance. *See generally,* Agr. ¶¶ 21–25. These are not measures FCI would have taken absent this litigation and Settlement Agreement, and Class Members will not be releasing their right to bring individual claims in consideration for this relief. *Compare Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071 (9th Cir. 2017).

<u>Fifth</u>, the Parties only reached Settlement after substantial discovery had taken place. Paronich MPA Decl. ¶ 12.

<u>Sixth</u>, Class Counsel have extensive experience in TCPA actions, and believe this Settlement to be in the best interests of the Class. *See* Paronich MPA Decl. ¶ 12; Klinger MPA Decl. ¶ 20.

<u>Seventh</u>, there is no governmental participant in this matter.

<u>Eighth</u>, after completion of Notice as approved by this Court and the close of the Objection Period, no Class Member has objected to the Settlement. Geraci Decl. ¶ 5.

Thus, these factors weigh in favor of a result exactly like that obtained by Plaintiff and Class Counsel: injunctive relief ensuring FCI's violations of the TCPA cease, paired with a release that explicitly maintains each individual Class Member's right to bring suit for their individual damages stemming from alleged violations of the TCPA. Accordingly, the Settlement should be approved.

### b.   Plaintiffs' Requested Attorneys' Fees And Costs Are Reasonable And Should Be Approved.

The Ninth Circuit recognizes two different methods for calculating reasonable attorneys' fees: the lodestar method and the percent-of-recovery method. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In cases resulting in injunctive relief, the lodestar method is preferred as "there

is no way to gauge the net value of the settlement or any percentage thereof." *Id.* The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate, and is adjusted from there based on factors including but not limited to: whether the results achieved were exceptional; risks of litigation; non-monetary benefits conferred by the litigation; customary fees for similar cases; the contingent nature of the fee and financial burden carried by counsel; and the lawyer's "reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size." *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).

For their efforts in obtaining the Settlement at issue, Class Counsel here seeks, and Defendant does not oppose, a request for $180,000 in combined attorneys' fees and costs. Agr. ¶ 30. This is broken down to include both $7,433,37 in reasonable and necessary litigation costs, and $172,566.63 in attorneys' fees. In seeking $172,566.63 in attorneys' fees, Class Counsel asks this Court to approve an award of their lodestar with a modest multiplier of 1.4.

### 1. Class Counsel expended significant time and labor litigating this case prior to Settlement.

The combined lodestar incurred by Class Counsel in this matter is $111,532.50. *See* Klinger Fees Decl. ¶¶ 17, 21; Paronich Fees Decl. ¶ 21. Class Counsel expect to incur an approximate additional $7,500 in fees in connection with preparing for argument at the final approval hearing and other miscellaneous matters, including responding to class member inquiries and claims administration. Klinger Fees Decl. ¶ 22; Paronich Fees Decl. ¶ 23. The rates used by Class Counsel have been approved in this Circuit. *See Rose v. Bank of Am. Corp.*, No. 5:11-cv-

02390, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) (approving partner billing rates between $350 and $775 per hour).[4]

Prior to taking on Plaintiff's case, Class Counsel thoroughly researched Defendant's practices and Plaintiff's legal claims by, among other things, conducting an independent investigation and researching TCPA and relevant cases. Klinger Fees Decl. ¶ 24. This information was critical to Class Counsel's understanding of the nature of Plaintiff's individual and representative claims, the scope of potential damages and remedies, and the potential risks and benefits of continued litigation. *Id.*

On September 18, 2019, Plaintiff filed her Class Action Complaint. ECF No. 1. On October 17, 2019, FCI filed its Answer, denying liability. ECF No. 14. On December 10, 2019, the Parties filed a Motion for a Protective Order, as they had already begun discovery. ECF No. 17. On December 24, 2019, the Parties submitted a Discovery Plan to the Court. ECF No. 19. In February 2019, a Motion to Compel Discovery was filed against Defendant, which was granted on March 23, 2020. ECF No. 26. In connection with that Motion to Compel, a subpoena on Ontario Systems, LLC, regarding the Class data needed for the case was submitted to the Court. *See* ECF No. 24. While working through discovery issues related to the Plaintiff's proposed Class, the Court continued the Scheduling Order several times. *See* ECF Nos. 31, 33 & 35.

In litigating this case, Class Counsel investigated the facts regarding Defendant's size and calling practices; drafted Plaintiff's Class Action Complaint; collected and reviewed discovery from Defendant; retained and worked with an expert to prove the Plaintiff's claims. *See* Paronich Decl. ¶ 25; Klinger Fees Decl. ¶ 25. After agreeing to mediate the case, Class Counsel spent time

---

[4] Counsel's rates are consistent with, and often lower than, the Legal Services Institute *Laffey* Matrix—a widely accepted fees matrix utilized in the District of Columbia where Class Counsel has an office. *See Salazar v. District of Columbia*, 809 F.3d 58, 65 (D.C. Cir. 2015).

preparing for mediation, and on September 15, 2020, the Parties participated in an all-day mediation held before experienced and respected mediator Hon. James Ware (Ret.) of JAMS, that would lead, eventually, to the drafting and finalizing of the Settlement Agreement at issue here. *Id.* After reaching an agreement in principle, Class Counsel spent weeks negotiating the Class Action Settlement Agreement along with the proposed Class Notice and Claim Form. *Id.* Once the Settlement was finalized, Class Counsel prepared Plaintiff's Motion for Preliminary Approval, as well as detailed declarations in support, and revisited and redesigned—at this Court's request—the Notice Plan. *Id.* Once Preliminary Approval was granted, Class Counsel supervised the Notice process and prepared the instant Motion for Final Approval. *Id.* Throughout litigation, Class Counsel were careful to split labor and avoid duplication of work where necessary. Klinger Fees Decl. ¶¶ 13–14; Paronich Fees Decl. ¶¶ 17–18.

## 2. *The fees sought by Class Counsel are well within the range of those regularly accepted in similar cases.*

The attorneys' fees and costs requested by Class Counsel are reasonable and well within the range of those regularly accepted in similar cases. The $180,000 sought in combined attorneys' fees and costs includes both $7,433,37 in reasonable and necessary litigation costs, and $172,566.63 in attorneys' fees. In seeking $172,566.63 in attorneys' fees, Class Counsel asks this court to approve an award of their lodestar with a multiplier of 1.4. Such a request is reasonable and well within the range of multipliers regularly awarded in the Ninth Circuit. *See Vizcaino*, 290 F.3d at 1052 (accepting a district court's multiplier of 3.65 and collecting cases demonstrating accepted lodestar multipliers ranging from 1.2 to 8.5); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1049 (S.D. Cal. May, 27, 2015) (finding fees of $1,271,250, a multiplier of 2.8 times the lodestar, reasonable); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *9 (determining a multiplier of 2.59 was appropriate, leading to fees of $2,404,243.91, inclusive of costs).

18

### 3. The results achieved were exceptional considering the risks of litigation and the financial status of Defendant.

After approximately a year of contested litigation, Class Counsel—with the assistance of Plaintiff and respected mediator Judge Ware (Ret.)—were able to negotiate a Settlement that provided significant injunctive relief in exchange for a class wide release *that allows Class Members to maintain their right to sue Defendant for violations of the TCPA.* Such a result is an even greater achievement given that FCI is a small business of limited net worth, without the resources to fund a considerably larger settlement and with limited applicable insurance. *See* Paronich MPA Decl. ¶ 9. In short, significant monetary relief, nearing the value of the Class claims, could not have been afforded by FCI: this Settlement allows those Class Members who wish to collect their statutory damages to do so on an individual basis though individual litigation, while affording all Class Members the benefit of an injunction against further violations of the TCPA and the implementation of policies and procedures and training geared toward ensuring TCPA compliance.

### 4. Class Counsel took on this case on a contingent basis, and risked incurring significant costs with no remuneration.

"The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis to compensate them for the risk that they might be paid nothing at all for their work." *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at \*11 (citing *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)); *see also Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency cases "for taking the risk of nonpayment by paying them a premium over their normal hourly rates").

Class Counsel took on this case on a contingent basis, and spent time on this matter that absent this litigation could have been spent on other cases. Klinger Fees Decl. ¶ 8; Paronich Fees

Decl. ¶ 13. Any renumeration to Class Counsel was wholly contingent on a successful outcome, and the risk undertaken was great. Klinger Fees Decl. ¶¶ 9–11; Paronich Fees Decl. ¶¶ 13–15. This is especially true given the quickly evolving nature of TCPA law, and the results of *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), which was making its way up the Courts as Counsel began and continued to litigate. Thus, in agreeing to litigate Plaintiff's claims, Class Counsel shouldered the risk of expending substantial costs and time litigating the action without any monetary gain in the event of an adverse judgment. Klinger Fees Decl. ¶ 9; Paronich Fees Decl. ¶ 13.

> **5.      *Class Counsel should be granted their requested costs, which are reasonable and necessary litigation expenses.***

As part of their $180,000 award, Class Counsel seeks reimbursements of litigation costs they advanced totaling $7,433.37. These costs were reasonably incurred investigating and prosecuting this case and include filing fees, expert fees, mediation fees and in research. Paronich Fees Decl. ¶ 22; Klinger Fees Decl. ¶ 23. Class Counsel are entitled to reimbursement of the out-of-pocket costs that they reasonably incurred investigating and prosecuting a settled case. *Couser v. Comenity Bank*, 125 F. Supp. 3d at 1049 (citing *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. Jan. 23, 1996)).

> **c.      The Service Award Requested By Plaintiff Should Also Be Approved.**

The Ninth Circuit has recognized that incentive awards "are intended to compensate class representatives for work done no behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to serve as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563, F.3d 948, 958–59 (9th Cir. 2009). As part of the Settlement, Plaintiff seeks an award of $3,500 in recognition of her service as a Class Representative. Agr. ¶ 29. This service award is meant to compensate Plaintiff for the efforts she put into this case over the past 18+ months. Klinger Fees Decl. ¶ 29. Such efforts include,

answering Class Counsel's questions, reviewing and approving the Complaint, remaining in touch with counsel during discovery, being available to Class Counsel during mediation, and reviewing and approving the Settlement Agreement. *Id.* The service award is also meant to compensate Plaintiff for the risk she took on in putting her name to a Complaint, as well as her willingness to proceed as a Representative of the Class whether the case reached Settlement. *Id.* Plaintiff was not promised an incentive or service award upon retaining Class Counsel. *Id.* at ¶ 30. Indeed, the efforts of the Plaintiff here are similar to what this Court has considered previously when awarding larger incentive awards. *See Osegueda v. N. Cal. InAlliance*, No. 18-cv-00835 WBS EFB, 2020 WL 4194051, at *7 (E.D. Cal. July 20, 2020) (slip copy) (Shubb, J.) (approving $5,000 incentive award holding where a plaintiff spent a significant amount of time assisting class counsel in the development of this case by responding to discovery, participating in mediation, assisting in the preparation and evaluation of the case, and evaluating and approving the proposed settlement on behalf of the class, and holding "[i]n light of plaintiff's efforts and risks incurred in bringing this action, the court finds his requested incentive award to be reasonable and will approve the award.").

The award requested by Plaintiff is not so disproportionate as to cause her interests to diverge from those of other Class Members. Should individual Class Members pursue their own claims against FCI, under the TCPA's statutory damages provision, they are each eligible to receive a *minimum* of $500, and up to $1,500 per violation. This amount is not insignificant, and sufficient to provide an incentive to Class Members to bring individual claims.

Moreover, the award requested by Plaintiff is well below the standard service awards regularly approved. In this Circuit for example, courts regularly find service awards of $5,000 well within the range of acceptable approval. *See, e.g., Morey v. Louis Vuitton N. Am., Inc.*, No.

11cv1517, 2014 WL 109194, at *11 (S.D. Cal. Jan. 9, 2014) (approving a $5,000 award to a class representative); *Villegas v. J.P. Morgan Chase & Co*., No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012) ("[T]he settlement provides for an incentive award to the Plaintiff in the amount of $10,000. In this District, a $5,000 incentive award is presumptively reasonable."); *Williams v. Costco Wholesale Corp.*, No. 02 cv2003 IEG (AJB), 2012 WL 2721452, at *7 (S.D. Cal. July 7, 2010) (approving a $5,000 award to a class representative in an antitrust case settling for $440,000); *see also Dennis v. Amerigroup Wash., Inc.,* No. 3:19-cv-05165-JLR (W.D. Wash. Mar. 23, 2021) (approving an incentive award of $10,000 in TCPA class action); *Bonoan v. Adobe, Inc.*, No. 3:19-cv-01068-RS (N.D. Cal. Dec. 2, 2020) (approving service award of $5,000). As such, the $3,500 award requested by Plaintiff is inherently reasonable and should be approved.

## VI.  CONCLUSION

The Settlement negotiated by Class Counsel on behalf of Plaintiff and the Class is fair, reasonable, and adequate. For the reasons discussed above, as well as those described in Plaintiff's Motion for Preliminary Approval, Plaintiff respectfully requests this Court enter the proposed Final Approval Order submitted as Exhibit 2 to the Parties' Settlement Agreement (ECF No. 38-1), finally certify the Settlement Class and appoint Class Counsel and Plaintiff as Representatives for the Class, award Plaintiff a service award in the amount of $3,500, grant Class Counsel attorneys' fees and costs in the amount of $180,000, and grant Final Approval of this Settlement.

**DATED:** May 4, 2021

Respectfully submitted,

By: _/s/ Gary M. Klinger_
Gary M. Klinger (*pro hac vice*)
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (202) 429-2290
Facsimile: (202) 429-2294
Email: gklinger@masonllp.com

Eric B. Swartz (ISB# 6396)
**JONES & SWARTZ PLLC**
623 West Hays Street
Boise, ID 83702
Telephone: (208) 489-8989
Facsimile: (208) 489-8988
Email: eric@jonesandswartzlaw.com

Anthony I. Paronich (*pro hac vice*)
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510
Email: anthony@paronichlaw.com

***Attorneys for Plaintiff and the Proposed Class***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system in accordance with the protocols for e-filing in the United States District Court for the District of Idaho on May 4, 2021, and will be served on all counsel of record who have consented to electronic notification *via* CM/ECF.

By: _/s/ Gary M. Klinger_
Gary M. Klinger (*pro hac vice*)

23