UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

----oo0oo----

NAOMI LEGERE-GORDON, individually and on behalf of others similarly situated,

          Plaintiff,

     v.

FIRSTCREDIT INCORPORATED,

          Defendant.

No. 1:19-cv-360 WBS

MEMORANDUM AND ORDER RE: MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, COSTS, AND REPRESENTATIVE SERVICE PAYMENT

----oo0oo----

Plaintiff Naomi Legere-Gordon, individually and on behalf of all others similarly situated, brought this putative class action against defendant Firstcredit Incorporated, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  (See Compl. (Docket No. 1).)  On January 26, 2021, the court granted plaintiff's unopposed motion for preliminary approval of class action settlement.  (See Order Granting Preliminary Approval (Docket No. 43).)  Plaintiff now moves unopposed for final approval of the parties' class action

settlement and attorneys' fees, costs, and a class representative

service payment.  (See Docket No. 46.)

I.   Discussion[1]

The Ninth Circuit has declared a strong judicial policy

favoring settlement of class actions.  Class Plaintiffs v. City

of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); see also

Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009)

("We put a good deal of stock in the product of an arms-length,

non-collusive, negotiated resolution[.]") (citation omitted).

Rule 23(e) provides that "[t]he claims, issues, or defenses of a

certified class may be settled . . . only with the court's

approval."  Fed. R. Civ. P. 23(e).

"Approval under 23(e) involves a two-step process in

which the Court first determines whether a proposed class action

settlement deserves preliminary approval and then, after notice

is given to class members, whether final approval is warranted."

Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523,

525 (C.D. Cal. 2004) (citing Manual for Complex Litig. (Third),

§ 30.41 (1995)).  This court satisfied step one by granting

plaintiff's unopposed motion for preliminary approval of class

action settlement on January 26, 2021.  (Docket No. 43.)  Now,

following notice to the class members, the court will consider

whether final approval is merited by evaluating: (1) the

treatment of this litigation as a class action and (2) the terms

---

[1]     The court already recited the factual and procedural
background in its order granting plaintiff's unopposed motion for
preliminary approval of the class action settlement.  (See Order
Granting Preliminary Approval at 2-5.)  Accordingly, the court
will refrain from doing so again.

of the settlement.  See Diaz v. Tr. Territory of Pac. Islands,

876 F.2d 1401, 1408 (9th Cir. 1989).

     A.   Class Certification

          A class action will be certified only if it meets the

requirements of Rule 23(a)'s four prerequisites and fits within

one of Rule 23(b)'s three subdivisions.  Fed. R. Civ. P. 23(a)-

(b).  Although a district court has discretion in determining

whether the moving party has satisfied each Rule 23 requirement,

the court must conduct a rigorous inquiry before certifying a

class.  See Califano v. Yamasaki, 442 U.S. 682, 701 (1979); Gen.

Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982).

          1.   Rule 23(a)

          Rule 23(a) restricts class actions to cases where:
          (1) the class is so numerous that joinder of all
          members is impracticable; (2) there are questions
          of law or fact common to the class; (3) the claims
          or defenses of the representative parties are
          typical of the claims or defenses of the class;
          and (4) the representative parties will fairly and
          adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These requirements are commonly referred

to as numerosity, commonality, typicality, and adequacy of

representation.  In the court's order granting preliminary

approval of the settlement, the court found that the putative

class satisfied the Rule 23(a) requirements.  (See Order Granting

Preliminary Approval at 5-13.)  The court is unaware of any

changes that would affect its conclusion that the putative class

satisfies the Rule 23(a) requirements, and the parties have not

indicated that they are aware of any such developments.  (See

Mot. for Final Approval.)  The court therefore finds that the

3

class definition proposed by plaintiff meets the requirements of Rule 23(a).

    2.    Rule 23(b)

    An action that meets all the prerequisites of Rule 23(a) may be certified as a class action only if it also satisfies the requirements of one of the three subdivisions of Rule 23(b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013).  In its order granting preliminary approval of the settlement, the court found that the requirements of Rule 23(b)(2) were satisfied.  (Order Granting Preliminary Approval at 13-15.)  The court is unaware of any changes that would affect its conclusion that Rule 23(b)(2) is satisfied.  Because the settlement class satisfies both Rule 23(a) and 23(b)(2), the court will grant final class certification of this action.

    3.    Rule 23(c)(2) Notice Requirements

    Under Rule 23(c)(2), whether notice to class members of certification under Rule 23(b)(2) must be provided is left to the district court's discretion.  See Fed. R. Civ. P. 23(c)(2)(A)( ("For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class." (emphasis added)); Equal Opportunity Emp't Comm'n v. Gen. Tel. Co. of Nw., Inc., 599 F.2d 322, 334 (9th Cir. 1979) ("When an action is certified under Rule 23(b)(2) . . . absent class members are not required to receive notice or to have the opportunity to opt-out of the suit.").

    In this case, the court required the parties to provide notice to the class because the proposed settlement would bind absent class members by waiving their right to bring a class

claim for damages against defendant.  See Fed. R. Civ. P. 23(e);

(Order Granting Preliminary Approval at 25).

While there are "no rigid rules to determine whether a settlement notice to class members satisfies constitutional and Rule 23(e) requirements," Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 114 (2d Cir. 2005), notice of settlement--like any form of notice--must comply with due process requirements under the Constitution.  See Rubenstein, 4 Newberg on Class Actions § 8:15 (5th ed.).  That is, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950).  While actual notice is not required, the notice provided must be "reasonably certain to inform the absent members of the plaintiff class." Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994) (citation omitted).  The content of the "[n]otice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  See Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004).

Here, the court ordered the parties to conduct a digital media notice plan using the Google Display Network, which provided a summary version of the notice of class action settlement and directed viewers to a website containing the full version of the settlement notice.  (See Order Granting Preliminary Approval at 28-31.)  The parties selected KCC Class Action Services ("KCC") to serve as the Settlement Administrator.

5

(Decl. of Jay Geraci re: Notice Procedures ¶ 1 ("Geraci Decl.") (Docket No. 46-1).)  KCC purchased 41,267,000 "impressions" to be distributed via various websites.  (Id. at ¶ 2.)  The impressions appeared on both mobile and desktop devices from February 15, 2021 through March 17, 2021.  (Id.)  41,499,034 impressions were ultimately delivered (232,034 were delivered at no extra charge).  (Id.)

On February 10, 2021, KCC set up a website and a toll-free telephone number dedicated to (1) providing information to class members about the Settlement Agreement; (2) answering frequently asked questions; and (3) downloading copies of the full notice of settlement or for requesting that a notice packet be mailed.  (Id. at ¶¶ 3-4.)  As of the date of plaintiff's motion for final approval, the website had been visited 9,855 times and the hotline had received 6 calls.  (Id.)  As of the date of plaintiff's motion for final approval, KCC had not received any objections to the settlement.  (Id. at ¶ 5.)

The notice provided on the settlement website identifies the parties, explains the nature of the proceedings, defines the class, provides the terms of the settlement, and explains the procedure for objecting to the settlement.  (Id. at Ex. B.)  The notice also explains the injunctive relief provided by the settlement, that class members will waive their right to participate in future class claims for damages against defendant for calls made during the class period, the amount that class counsel is requesting in attorneys' fees, and the size of plaintiff's requested incentive award.  (Id.)  Accordingly, the notice complies with Rule 23(e)'s requirements.

B.    Rule 23(e): Fairness, Adequacy, and Reasonableness of
      Proposed Settlement

Having determined that class treatment is warranted, the court must now address whether the terms of the parties' settlement appear fair, adequate, and reasonable. See Fed. R. Civ. P. 23(e)(2). To determine the fairness, adequacy, and reasonableness of the agreement, Rule 23(e) requires the court to consider four factors: "(1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other." Id. The Ninth Circuit has also identified eight additional factors the court may consider, many of which overlap substantially with Rule 23(e)'s four factors:

> The strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).

1.    Adequate Representation

The court must first consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This analysis is "redundant of the requirements of Rule 23(a)(4) . . . ." Hudson v. Libre Tech., Inc., No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060,

at *5 (S.D. Cal. May 13, 2020) (quoting Rubenstein, 4 Newberg on Class Actions § 13:48 (5th ed.)) see also In re GSE Bonds Antitr. Litig., 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)).

Because the Court has found that the proposed class satisfies Rule 23(a)(4) for purposes of class certification, the adequacy factor under Rule 23(e)(2)(A) is also met. See Hudson, 2020 WL 2467060, at *5.

### 2. Negotiation of the Settlement Agreement

Counsel for both sides appear to have diligently pursued settlement after thoughtfully considering the strength of their arguments and potential defenses. The parties participated in an arms-length mediation before an experienced employment litigation mediator and former federal judge, Hon. James Ware (ret.) on September 15, 2020, ultimately coming to a tentative agreement at the close of the mediation and producing a final agreement the next month. (Decl. of Anthony Paronich ("Paronich Decl.") ¶ 25 (Docket No. 46-3).) Given the sophistication and experience of plaintiff's counsel and the parties' representation that the settlement reached was the product of arms-length bargaining, the court does not question that the proposed settlement is in the best interest of the class. See Fraley v. Facebook, Inc., 966 F. Supp. 2d 939, 942 (N.D. Cal. 2013) (holding that a settlement reached after informed negotiations "is entitled to a degree of deference as the private consensual decision of the parties" (citing Hanlon, 150 F.3d at 1027)).

### 3. Adequate Relief

In determining whether a settlement agreement provides

adequate relief for the class, the court must "take into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any [other] agreement[s]" made in connection with the proposal. See Fed. R. Civ. P. 23(e)(2)(C); Baker v. SeaWorld Entm't, Inc., No. 14-cv-02129-MMA-AGS, 2020 WL 4260712, at *6-8 (S.D. Cal. Jul. 24, 2020).

The court notes that, in evaluating whether the settlement provides adequate relief, it must consider several of the same factors as outlined in Hanlon, including the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout the trial, and the amount offered in settlement. See Hanlon, 150 F.3d at 1026.

In determining whether a settlement agreement is substantively fair to class members, the court must balance the value of expected recovery against the value of the settlement offer. See In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). Though plaintiff's counsel estimates that defendant could face up to $16,500,000 in statutory penalties based on records of the violative calls at issue, the Settlement Agreement does not provide any monetary relief to class members. (See generally Mot. for Preliminary Approval of Class Action Settlement, Ex. 1 ("Settlement Agreement") (Docket No. 38-

9

1).)  Instead, the Settlement Agreement provides injunctive relief for class members by requiring defendant to scrub its call list of all cellular numbers for which defendant does not have a good faith belief that consent to call has been provided, and to implement specific, delineated changes to its policies and procedures to ensure future TCPA compliance.  (See id. ¶¶ 21-25.)  Plaintiff obtained this relief in consideration for a limited release which preserves the class members' individual claims against defendant.  (See id.)

Plaintiff's counsel represents that, absent settlement, continuing litigation--which would likely include class certification and a motion for summary judgment--would be costly, time consuming, and uncertain in outcome.  (See Mot. for Final Approval of Class Action Settlement at 9 (Docket No. 46); Decl. of Gary M. Klinger ("Klinger Decl.") ¶ 11 (Docket No. 46-2).)  Because the Supreme Court recently narrowed the TCPA's definition of Automated Telephone Dialing Systems ("ATDS") to systems that must either have the capacity to store a number using a random or sequential number generator, see Facebook, Inc. v. Duguid, 141 S. Ct. 1163 (2021), class counsel represents that there is a risk that class members' claims could be completely eliminated or "zeroed out."  The Settlement Agreement's injunctive relief provides class members with some relief, while allowing them each to pursue defendant individually for damages in the future.  (See Mot. for Final Approval at 9.)  The settlement's injunctive relief

is also in line with the TCPA's purpose, which is to prevent cell phone users from receiving harassing phone calls from robocallers.

Given the strength of plaintiff's claims and defendants' potential exposure, as well as the risk, expense, and complexity involved in further litigation, and in light of defendant's limited funds and corresponding inability to pay a class-wide monetary judgment (see id.), the court is satisfied that the settlement and resulting distribution provides a strong result for the class. See Tableware, 484 F. Supp. 2d at 1079.

The Settlement Agreement further provides for an award of attorney's fees and costs totaling $180,000. (See Settlement Agreement ¶ 30.) If a negotiated class action settlement includes an award of attorney's fees, then the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

Plaintiff's counsel has included a request for attorneys' fees and costs in its motion for final approval of the class action settlement pursuant to Federal Rule 23(h). (Mot. for Final Approval at 15.) As discussed in additional detail below, the court finds plaintiff's counsel's request for attorneys' fees in the amount of $172,566.63 to be excessive, and will instead award a lower sum, $74,153.00. The court is satisfied that this lower sum is reasonable and supports approval of the settlement.

In light of the claims at issue, defendants' potential exposure and the risk to plaintiff and to the class of proceeding to trial, the court finds that the substance of the settlement is fair to class members and thereby "falls within the range of possible approval." See Tableware, 484 F. Supp. 2d at 1079; Ramirez, 2017 WL 3670794, at *3. Counsel has not directed the court to any other relevant agreements that would alter this analysis. The court therefore finds that Rule 23(e)'s third factor is satisfied. See Fed. R. Civ. P. 23(e)(C).

### 4. Equitable Treatment of Class Members

Finally, the court must consider whether the Settlement Agreement "treats class members equitably relative to each other." See Fed. R. Civ. P. 23(e)(2)(D). In doing so, the Court determines whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." Hudson, 2020 WL 2467060, at *9 (quoting Tableware, 484 F. Supp. at 1079.

Here, the Settlement Agreement does not improperly discriminate between any segments of the class, as all class members are entitled to the same injunctive relief. (See Settlement Agreement ¶ 13.) While the Settlement Agreement allows plaintiff to seek an incentive award of $3,500 (Settlement Agreement ¶ 29), the court is satisfied that the prospect of additional compensation, in and of itself, has not caused Ms. Legere-Gordon's interests to diverge from the class, primarily because other class members are free to pursue their own claims for damages against defendant. However, as detailed further below, in Section E, the court will only award plaintiff $1,500.

See Hudson, 2020 WL 2467060, at *9.

The court therefore finds that the Settlement Agreement treats class members equitably.  See Fed. R. Civ. P. 23(e)(D).

### 5.   Remaining Hanlon Factors

In addition to the Hanlon factors already considered as part of the court's analysis under Rule 23(e)(A)-(D), the court must also take into account "the extent of the discovery completed . . . the presence of government participation, and the reaction of class members to the proposed settlement."  Hanlon, 150 F.3d at 1026.

Through formal discovery, defendant provided plaintiff with class data including a call list, call logs, and call data, including the dates and times of calls made to class members, to the extent defendant possessed records reflecting such data. (See Docket No. 31.)  This factor weighs in favor of final approval of the settlement.

The seventh Hanlon factor, pertaining to government participation, is neutral, as there was no governmental participation in this matter.  Hanlon, 150 F.3d at 1026.  The eighth Hanlon factor, the reaction of the class members to the proposed settlement, also weighs in favor of final approval.  See Hanlon, 150 F.3d at 1026.  No class members have objected to or sought to opt out of the settlement.  See id.

The court therefore finds that the remaining Hanlon factors weigh in favor of preliminary approval of the Settlement Agreement.  See Ramirez, 2017 WL 3670794, at *3.

In sum, the four factors that the court must evaluate under Rule 23(e) and the eight Hanlon factors, taken as a whole,

13

1  appear to weigh in favor of the settlement.  The court will

2  therefore grant final approval of the Settlement Agreement.

3      C.  <u>Attorneys' Fees</u>

4      Federal Rule of Civil Procedure 23(h) provides, "[i]n a

5  certified class action, the court may award reasonable attorney's

6  fees and nontaxable costs that are authorized by law or by the

7  parties' agreement."  Fed. R. Civ. P. 23(h).  If a negotiated

8  class action settlement includes an award of attorneys' fees,

9  that fee award must be evaluated in the overall context of the

10  settlement.  <u>Knisley v. Network Assocs.</u>, 312 F.3d 1123, 1126 (9th

11  Cir. 2002); <u>Monterrubio v. Best Buy Stores, L.P.</u>, 291 F.R.D. 443,

12  455 (E.D. Cal. 2013) (England, J.).  The court "ha[s] an

13  independent obligation to ensure that the award, like the

14  settlement itself, is reasonable, even if the parties have

15  already agreed to an amount."  <u>Bluetooth Headset</u>, 654 F.3d at

16  941.

17      The Ninth Circuit recognizes two different methods for

18  assessing the reasonableness of attorneys' fees: the lodestar

19  method and the percent-of-recovery method.  <u>See</u> <u>Hanlon</u>, 150 F.3d

20  at 1029.  In injunctive-relief class actions certified under Rule

21  23(b)(2), the lodestar method is preferred, as "there is no way

22  to gauge the net value of the settlement or any percentage

23  thereof."  <u>Id.</u>  Under the lodestar method, a lodestar value is

24  calculated by multiplying the number of hours reasonably expended

25  by a reasonable hourly rate.  <u>Fischel v. Equitable Life Assurance</u>

26  <u>Soc'y of United States</u>, 307 F.3d 997, 1006-07 (9th Cir. 2002).

27  There is a "strong presumption" that the lodestar figure

28  represents a reasonable fee.  <u>D'Emanuele v. Montgomery Ward &</u>

Co., 904 F.2d 1379, 1384 (9th Cir. 1990), overruled on other grounds by Burlington v. Dague, 505 U.S. 557 (1992). Thus, although a court can adjust the lodestar upward or downward based on certain factors, adjustments are "the exception rather than the rule." Id. at 1383-84.

One instance in which an upward adjustment is appropriate is when there is a risk of nonpayment. See Fischel, 307 F.3d at 1008. In fact, the Ninth Circuit has held that it "is an abuse of discretion to fail to apply a risk multiplier . . . when (1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky. Id.

Here, class counsel calculates their lodestar at $111,532.50. Counsel states in their declarations that this lodestar was calculated using applicable billing rates for Chicago, Washington D.C., and Boston--their firms' places of business--as follows:

| Name | Position | Hourly Rate | Total Hours | Lodestar |
|------|----------|-------------|-------------|----------|
| Gary Klinger | Partner | $700/hour | 78.25 | $54,775.00 |
| Danielle Perry | Partner | $650/hour | 17.25 | $11,212.50 |
| Taylor Heath | Paralegal | $170/hour | 8.5 | $1,445.00 |
| Anthony Paronich | Partner | $600/hour | 73.5 | $44,100.00 |
| Total: | | | | $111,532.50 |

(See Klinger Decl. ¶¶ 15-20; Paronich Decl. ¶¶ 20-21.) Class

15

counsel estimates that they will incur an additional $7,500.00 in fees "in connection with preparing for argument at the final approval hearing and other miscellaneous matters, including responding to class member inquiries and claims administration," increasing the lodestar to $119,032.50.  (Mot. for Final Approval at 16.)  Class counsel further asks that the court apply a multiplier of 1.45, which would result in a total attorneys' fee award of $172,566.63.  (See id.)

        To determine whether counsel has employed a "reasonable hourly rate" for purposes of calculating the lodestar amount, the court must look to the "prevailing market rates in the relevant community."  Gonzalez v. City of Maywood, 729 F.3d 1196, 1206 (9th Cir. 2013) (quoting Blum v. Stenson, 465 886, 895 (9th Cir. 2001)).  "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."  Id. (internal quotation marks omitted) (quoting Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir.2010)).  Within this geographic community, the district court should "tak[e] into consideration the experience, skill, and reputation of the attorney [or paralegal]."  Dang v. Cross, 422 F.3d 800, 813 (9th Cir. 2005) (internal quotation marks omitted).  Importantly, the fee applicant has the burden of producing "satisfactory evidence" that the rates he requests meet these standards.  Id. at 814.  Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the relevant community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.  Chalmers v.

16

City of Los Angeles, 796 F.2d 1205, 1214 (9th Cir. 1986), opinion amended on denial of reh'g, 808 F.2d 1373 (9th Cir. 1987).

The only evidence class counsel has provided that their hourly rates are reasonable is a single case from 2014, in which the Northern District of California approved partner billing rates between $350 and $775 per hour, and the Legal Services Institute Laffey Matrix, a "widely accepted fees matrix utilized in the District of Columbia where Class Counsel has an office." (Id. at 17.) The relevant inquiry for the court, however, is not whether counsels' rates are reasonable in their home markets, but whether they are reasonable in the District of Idaho, the forum in which the district court sits. See Gonzalez, 729 F.3d at 1206.

A survey of recent cases in which Idaho district courts have awarded attorneys' fees shows that billing rates of $245-$280/hour are generally held to be reasonable for partners in the Idaho community. See, e.g., Scoyni v. Central Valley Fund L.P. II & III, No. 1:20-cv-00402-SEH, 2021 WL 733309, at *1 n.10 (D. Idaho Feb. 16, 2021) (citing Asset Vision, LLC v. Fielding, No. 4:13-CV-00288-BLW (D. Idaho Dec. 16, 2014) (finding $245-280 to be reasonable rates for partners); Giltner Logistics Services, Inc. v. Syny Logistics Inc., 1:18-CV-00305-BLW (D. Idaho April 4, 2019) (finding $245 to be a reasonable rate for a partner)). Similarly, Idaho district courts generally hold that billing rates of $120/hour for paralegals are reasonable. See, e.g., Gonzales on behalf of A.G. v. Burley High School, No. 4:18-cv-00092-DCN, 2020 WL 7047747, at *7 (D. Idaho Nov. 30, 2020); Fuller v. Dep't of Corr., No. 1:13-cv-00035-DCN, 2019 WL 6332850

(D. Idaho Nov. 26, 2019). Given the sophistication and experience of class counsel in this case (see Decl. of Gary Klinger in Support of Mot. for Preliminary Approval ¶¶ 4-17 (Docket No. 38-3); Decl. of Anthony Paronich in Support of Mot. for Preliminary Approval ¶¶ 3-7 (Docket No. 38-2)), the court finds a reasonable hourly rate for the partners in this case is $280/hour, a figure at the high end of the range of rates approved by courts in the District of Idaho. See Scoyni, 2021 WL 733309, at *1. The court further finds that a rate of $120/hour is reasonable for Mason Lietz & Klinger's paralegal, Ms. Heath. Gonzales, 2020 WL 7047747, at *7.

Substituting these hourly rates for those submitted by counsel, and assuming that counsel would incur an additional $2,800 in fees for remaining tasks in this case under Idaho rates, yields a lodestar of $51,140.00, as follows:

| Name | Position | Hourly Rate | Total Hours | Lodestar |
|------|----------|-------------|-------------|----------|
| Gary Klinger | Partner | $280/hour | 78.25 | $21,910.00 |
| Danielle Perry | Partner | $280/hour | 17.25 | $4,830.00 |
| Taylor Heath | Paralegal | $120/hour | 8.5 | $1,020.00 |
| Anthony Paronich | Partner | $280/hour | 73.5 | $20,580.00 |
| Additional Fees | | | | $2,800 |
| Total: | | | | $51,140 |

"A district court generally has discretion to apply a

multiplier to the attorneys' fees calculation to compensate for the risk of nonpayment." See Fischel, 307 F.3d at 1008. Here, counsel represents that there was a substantial risk of nonpayment in this case because of the inherent unpredictability of litigation and because of the rapidly evolving nature of jurisprudence involving the TCPA, "where jurisdictions have been historically split as to the particularly technology included in the definition of the statute." (Klinger Decl. ¶ 11.) Indeed, the Supreme Court recently held that the definition of an ATDS under the statute was significantly narrower than many courts had assumed. See Duguid, 141 S. Ct. at 1163. Because counsel was retained on a contingent basis, these risks posed a threat not only to success in the case but to the chances counsel would be compensated for its work representing the class. (See id.) The court will therefore grant the 1.45 multiplier requested by counsel, which the court finds to be well within the range of multipliers granted by courts in this circuit to successful plaintiffs. See Johnson v. Fujitsu Tech. & Bus. of Am., Inc., No. 16-cv-03698-NC, 2018 U.S. Dist. LEXIS 80219, at *20 (N.D. Cal. May 11, 2018) (finding multiplier of 4.37 to be reasonable); In re NCAA Ath. Grant-In-Aid Cap Antitrust Litig., 2017 U.S. Dist. LEXIS 201108, at *21 (N.D. Cal. Dec. 6, 2017) (finding multiplier of 3.66 to be "well within the range of awards in other cases.").

Accordingly, the court will grant attorneys' fees to class counsel in the amount of $74,153.00 ($51,140.00 x 1.45).

D.   Costs

"There is no doubt that an attorney who has created a

common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." In re Heritage Bond Litig., Civ. No. 02-1475, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005).  Here, the parties agreed that plaintiff's counsel shall be entitled to recover reasonable attorneys' fees and costs, not to exceed $180,000.  (Settlement Agreement ¶ 30.)  Counsel states that it has incurred reasonable and necessary litigation costs to date in the amount of $7,433.37.  (Klinger Decl. ¶ 22; Paronich Decl. ¶ $5,149.94.) These expenses include mediation fees, research expenses, and expert witness fees.  (Id.)  The court finds that these are reasonable litigation expenses, and will therefore grant class counsel's request for costs in the amount of $7,433.37.

E.    Representative Service Award

"Incentive awards are fairly typical in class action cases."  Rodriguez, 563 F.3d at 958.  "[They] are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  Id. at 958-59.

Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ."  Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013).  In assessing the reasonableness of incentive payments, the court should consider "the actions the plaintiff has taken to protect

the interests of the class, the degree to which the class has benefitted from those actions" and "the amount of time and effort the plaintiff expended in pursuing the litigation." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003) (citation omitted). The court must balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." Id.

In the Ninth Circuit, an incentive award of $5,000 is presumptively reasonable. Davis v. Brown Shoe Co., Inc., No. 1:13-01211 LJO BAM, 2015 WL 6697929, at *11 (E.D. Cal. Nov. 3, 2015) (citing Harris v. Vector Marketing Corp., No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases). The single named plaintiff, Naomi Legere-Gordon, seeks an incentive payment of $3,500. (Klinger Decl. ¶ 28.)

In its Order Granting Preliminary Approval, the court noted that, while plaintiff's request for an incentive payment is within the range the Ninth Circuit has designated "presumptively reasonable," plaintiff would "have to submit additional evidence documenting her time and effort spent on this case and the likely value of other class members' individual claims for damages to ensure that her additional compensation above other class members is justified." (Order Granting Preliminary Approval at 25.)

The only evidence submitted evidencing plaintiff's efforts in this case is a single sentence in the declaration of her counsel, Gary Klinger: "such efforts [of Ms. Legere-Gordon] include, answering Class Counsel's questions, reviewing, and approving the Complaint, remaining in touch with counsel during discovery, being available to Class Counsel during mediation, and

reviewing and approving the Settlement Agreement." (Klinger Decl. ¶ 28.) Ms. Legere-Gordon did not submit her own declaration in support of her motion. (See generally Docket No. 46.) Plaintiff's motion also contains no evidence showing the likely value of the individual claims other class members will be free to pursue.

In light of the lack of evidence submitted by plaintiff, the court is not satisfied that it could award plaintiff a $3,500 incentive payment without "improperly granting preferential treatment to [the] class representative[]." Hudson, 2020 WL 2467060, at *5. Plaintiff's fellow class members will not receive any financial benefit from this class action. Plaintiff has not provided sufficient evidence to demonstrate why she should be entitled to $3,500 more than any other class member will receive. See id. It does not appear as if plaintiff contributed much effort to this action, other than "being available" to confer with counsel and reviewing and approving key documents, such as the complaint and the Settlement Agreement. (Klinger Decl. ¶ 28.) Counsel's declaration does not even indicate that plaintiff attended the mediation which led to settlement in this matter. (See id.) While counsel asserts that the service award is also meant to compensate plaintiff for the risk she took in putting her name on a complaint, the court struggles to discern exactly what risk plaintiff now faces. Unlike a wage and hour class action, for instance, where a named plaintiff may suffer retaliation from her future employer or prejudice in attempting to obtain future employment, see Flores v. Dart Container Corp., No. 2:19-cv-00083 WBS JDP, 2021 U.S.

Dist. LEXIS 94456, at **25-26 (E.D. Cal. May 18, 2021),
plaintiff does not identify any specific harm she is likely to
suffer in the future as a result of her association with a TCPA
class action alleging that she received unsolicited robocalls on
her cell phone.

However, because service awards are also designed to
"recognize [named plaintiffs'] willingness to act as a private
attorney general," Rodriguez, 563 F.3d at 958, the court will
still grant plaintiff a service award, though not one as large as
requested in her motion.  Based on the efforts expended by
plaintiff in this case, and in recognition of her willingness to
act as a "private attorney general," the court will authorize
payment of a $1,500 service award.  Staton, 327 F.3d at 977

II.  Conclusion

Based on the foregoing, the court will grant final
certification of the settlement class and will approve the
settlement set forth in the settlement agreement as fair,
reasonable, and adequate.  The settlement agreement shall be
binding upon all participating class members.

IT IS THEREFORE ORDERED that plaintiff's unopposed
motion for final approval of the parties' class action settlement
and attorneys' fees, costs, and a class representative service
payment (Docket Nos. 35-38) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED THAT:

(1) Solely for the purpose of this settlement, and
pursuant to Federal Rule of Civil Procedure 23, the court hereby
certifies the following class: All natural and juridical persons
within the United States (a) to whom defendant placed, or caused

1   to be placed, a call, (b) directed to a number assigned to a
2   cellular telephone service, but not assigned to the intended
3   recipient of defendant's calls, (c) by using an automatic
4   telephone dialing system or an artificial or prerecorded voice,
5   (d) from September 18, 2015 through January 26, 2021 (i.e., the
6   Class Period);

7           (2) The court appoints the named plaintiff Naomi
8   Legere-Gordon as class representative and finds that she meets
9   the requirements of Rule 23;

10          (3) The court appoints law firm of Mason Lietz &
11  Klinger LLP, by and through Gary Klinger, and Paronich Law, P.C.,
12  by and through Anthony Paronich, as class counsel and finds that
13  they meet the requirements of Rule 23;

14          (4) The plan for class notice set forth in the parties'
15  January 19, 2021 Joint Status Report and in the court's Order
16  Granting Preliminary Approval of the Class Action Settlement is
17  the best notice practicable under the circumstances and satisfies
18  the requirements of due process and Rule 23.  The plan is
19  approved and adopted. The notice to the class complies with Rule
20  23(e) and is approved and adopted;

21          (5) The court finds that the parties and their counsel
22  took appropriate efforts to locate and inform all class members
23  of the settlement.  Given that no class member filed an objection
24  to the settlement, the court finds that no additional notice to
25  the class is necessary;

26          (6) As of the date of the entry of this order,
27  plaintiff and all class members who have not timely opted out of
28  this settlement herby do and shall be deemed to have fully,

finally, and forever released, settled, compromised,
relinquished, and discharged defendants of and from any and all
settled claims, pursuant to the release provisions stated in the
parties' settlement agreement;

(7) Plaintiff's counsel is entitled to fees in the
amount of $74,153.00, and litigation costs in the amount of
$7,433.37;

(8) KCC Class Action Services, LLC is entitled to
administration costs in the amount of $41,500.00;

(9) Plaintiff Naomi Legere-Gordon is entitled to an
inventive award in the amount of $1,500.00.

(10) Beginning sixty days after issuance of this Order,
and continuing for a period of no less than two (2) years, or
until there are such changes in the law related to the below
practices that occur after the date of this Order, defendant
shall update and improve its processes and procedures concerning
compliance with the TCPA as follows:

(a) defendant shall implement a scrub of phone
numbers placed by clients or otherwise obtained to determine
whether the number is a cell phone. If a scrub determines a
phone number is a cell phone, defendant will not put it on its
dialing equipment unless it has a good faith basis to believe
there is consent to call the number or the law otherwise permits
such calls;

(b) defendant shall revise its written TCPA
processes, procedures, and training materials consistent with
paragraph (10)(a);

(c) defendant shall implement regular training

for its employees concerning its TCPA processes and procedures as set forth in paragraph (10)(a)

(d) FCI shall issue quarterly reports to class counsel concerning TCPA litigation during the two-year injunctive period;

(e) FCI shall submit proof of compliance with the injunction to Class Counsel by way of providing the training and testing materials used in the training upon the commencement of such training. Furthermore, a declaration of the responsible person at FCI for ensuring compliance with the training requirements of the injunction shall be provided upon completion of the training. Class Counsel shall be provided such other documentation of compliance as they might deem necessary to confirm compliance, upon request, subject to either party seeking review by the court as to the reasonableness of the request(s).

(f) At the end of the 24-month injunction, defendant shall submit to Class Counsel a declaration from its training coordinator confirming that training was provided on a regular basis during the injunction term, as required by paragraph (10)(c). Further, at the end of the 24-month Stipulated Injunction, FCI shall also submit to Class Counsel an exemplar of the revised TCPA testing materials to confirm FCI's compliance with paragraph (10)(b).

(g) During the 24-month term of the injunction, both plaintiff and defendant shall have the right to seek relief from, or modification of, the injunction based upon an unfair burden on the business, or a change in the law. Any request for alteration or modification of the injunction's terms shall be

made to the court.  Any alteration or modification of this
injunction shall not extend the length of the 24-month
injunction.  Any alteration or modification shall only apply
prospectively for the remainder of the 24-month injunction.

      (11) This action is dismissed with prejudice.  However,
without affecting the finality of this Order, the court shall
retain continuing jurisdiction over the interpretation,
implementation, and enforcement of the Settlement Agreement and
this Order, which includes the 24-month injunction, with respect
to all parties to this action and their counsel of record.

      The clerk is instructed to enter judgment accordingly.

Dated:  June 2, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE